LAKSHMI-ARUNACHALAM, Ph.D.

222 Stanford Avenue, Menlo Park, CA 94025

TEL: (650) 690-0995

FAX: (650) 854-3393

Email: laks22002@yahoo.com

Plaintiff

**FILED**

JUN 12 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAKSHMI-ARUNACHALAM, PH.D. | Case No.:  CV 17 3383 |
| Plaintiff, | **VIOLATION OF THE CONSTITUTION AND OATH OF OFFICE, BREACH OF PUBLIC TRUST, TREASON, MISPRISION OF TREASON, AIDING AND ABETTING TREASON, CONSPIRACY, HINDERING ACCESS TO JUSTICE BY MISFEASANCE, DENIAL OF DUE PROCESS, DEPRIVATION OF RIGHTS, DEPRIVATION OF RIGHTS UNDER COLOR OF LAW** |
| vs. | |
| RICHARD G. ANDREWS, LEONARD P. STARK, SUE L. ROBINSON ELIZABETH D. LAPORTE, AND DOES 1-100 INCLUSIVE, | |
| Defendants. | **DEMAND FOR JURY TRIAL YES** |

## I. Parties in this Complaint:

### a. Plaintiff.

LAKSHMI-ARUNACHALAM, Ph.D.

222 Stanford Avenue, Menlo Park, CA 94025

TEL: (650) 690-0995; EMAIL: laks22002@yahoo.com

### b. Defendants.

### Defendant 1:

RICHARD G. ANDREWS,

844 N. King Street, Unit 9, Room 6325

Wilmington, DE 19801

Tel: 302.573.4581;

**Defendant 2:**

LEONARD P. STARK,

844 N. King Street,  Unit 26, Room 6124,

Wilmington, DE 19801

Tel.: (302) 573-4571;

**Defendant 3:**

SUE L. ROBINSON,

844 N. King Street, Unit 31, Room 4124,

Wilmington, DE 19801

Tel: 302.573.6310; and

**Defendant 4:**

Elizabeth D. Laporte,

San Francisco Courthouse, Courtroom E - 15th Floor,

450 Golden Gate Avenue, San Francisco, CA 94102;

Tel: 415.522.3694;

Address for the U.S. Attorney for San Jose District, as the action is brought in the U.S.

District Court for the Northern District of California, San Jose Division:

| U.S. Attorney's Office | and | U.S. Attorney's Office |
|---|---|---|
| Heritage Bank Building | | Federal Courthouse |
| 150 Almaden Blvd. Suite 900 | | 450 Golden Gate Avenue |
| San Jose, CA 95113 | | San Francisco, CA 94102 |

Tel: 408.535.5061                    Tel: 415.436 7200;

and

**Defendant 5:**

DOES 1 through 100, inclusive.

Plaintiff, LAKSHMI-ARUNACHALAM, Ph.D., alleges:

1. Plaintiff LAKSHMI-ARUNACHALAM, Ph.D., a United States citizen, is the inventor of "The Internet of Things (IoT)"— "Web Applications Displayed on a Web browser"— and inventor/assignee of U.S. Patent Nos. 5,987,500 ('500 patent), 8,108,492 ('492 patent) and 8,037,158 ('158 patent) asserted against JPMorgan Chase and Company ("JPMorgan") in the U.S. District Court for the District of Delaware Case No. 1:12-cv-282-SLR/RGA (D.Del.); of U.S. Patent No. 7,340,506 ('506 patent) asserted against the United States in the U.S. Court of Federal Claims Case No. 1:16-cv-358c-NGF (COFC) and against IBM in the U.S. District Court for the District of Delaware Case No. 1:16-cv-281-RGA (D.Del.); of U.S. Patent No. 8,271,339 ('339 patent) asserted against Fremont Bancorporation *et al* ("Fremont Bank") in the U.S. District Court for the Northern District of California and Fulton Financial ("Fulton Bank") in Case No. 1:14-cv-490-RGA (D.Del.); of U.S. Patent Nos. 5,778,178 ("'178 patent") and 6,212,556 ("'556 patent") asserted in the U.S. District Court for the District of Delaware against Fedex, Dell and AllState Insurance, who are customers of Microsoft; and all of which and her other 4 patents (all 11 patents herein after **"1995 Patent Grant"**) all deriving a priority date of 11/13/1995 from her provisional patent application with S/N 60/006,634 and is, and at all times herein mentioned is/was an individual residing at 222 Stanford Avenue, Menlo Park, CA 94025.

2. Having a priority date of 1995, the '500, '492, '158, '339, '178, '556 and '506 patents disclose the fundamental technology underlying Web applications displayed on a Web browser, that are reflected in the Corporate Infringers' and the U.S. Government's accused systems in Case No. 1:16-cv-358c-NGF (COFC) and in JPMorgan's, Dell's, Fedex's, All State Insurance Co's, Fremont Bank's, Fulton Bank's, Citizens' Financial Group's, SAP's and the United States' accused systems in Case Nos. 1:12-cv-282-SLR/RGA (D.Del.), 1:14-cv-490-RGA (D. Del.), 1:12-cv-355-RGA(D. Del.); 1:16-cv-358c-NGF (COFC); and other cases.

3. Defendant, RICHARD G. ANDREWS (hereinafter "Andrews"), is a federal judge in the U.S. District Court for the District of Delaware and has an address at 844 N. King Street, Wilmington, DE 19801. Andrews resides in Delaware and transacts business throughout the State of Delaware. On May 11, 2011, President Obama nominated Andrews to a seat on the U.S. District Court for the District of Delaware, to fill the vacancy created when Judge Joseph J. Farnan Jr. retired on July 31, 2010. He received his commission on November 7, 2011. Defendant Andrews was a former State prosecutor for the state of Delaware and a former Assistant United States Attorney for the District of Delaware.

4. Defendant LEONARD P.STARK (hereinafter "Stark") is the Chief United States District Judge of the United States District Court for the District of Delaware and was a United States Magistrate Judge of the same district. Stark resides in Delaware and transacts business throughout the State of Delaware. On March 17, 2010, President Obama nominated Stark and Stark received commission on August 10, 2010. Stark became Chief Judge in 2014. From 1997 until 2001, Stark was an associate with the Wilmington, Delaware office of the law firm Skadden, Arps, Slate, Meagher & Flom. From 2002 until 2007, Stark served as an

Assistant United States Attorney in Wilmington.

5. Defendant SUE L. ROBINSON  (hereinafter "Robinson") is a Senior United States federal judge of the United States District Court for the District of Delaware. Robinson resides in Delaware and transacts business throughout the State of Delaware. On October 1, 1991, President George H. W. Bush nominated Robinson and Robinson received her commission on November 18, 1991. She served as chief judge from 2000 to 2007. She assumed senior status on February 3, 2017. Robinson was in private practice in Wilmington, Delaware from 1978 to 1983. She was an assistant United States Attorney of the District of Delaware from 1983 to 1988. Robinson was a United States Magistrate Judge for the District of Delaware from 1988 to 1991.

6. Defendant ELIZABETH D. LAPORTE  (hereinafter "Laporte") is a United States Magistrate Judge for the Northern District of California and has an address at 450 Golden Gate Avenue, San Francisco, CA 94102. Laporte resides in this judicial district and transacts business throughout the State of California. She was appointed on April 4, 1998.

7. The United States (hereinafter "USA") is using Plaintiff's patented Web applications on a Web browser profusely in all departments and agencies of the United States in the Federal Government's diverse operations. Plaintiff's patented technology is <u>mission critical to how the United States conducts its business and operations today on the Web</u>  in its various agencies,  such as homeland security, the United States Patent and Trademark Office, Department of Commerce, Department of Defense, the CIA, FBI, Department of Energy, Department of Education,  Environmental Protection Agency,  Government Printing Office, General Services Administration, Health and Human Services, Housing and Urban Development, Interstate Commerce Commission, Department of Justice, Department of

Labor, NASA, the Navy, Postal Service, the State Department, SBA, Department of Transportation, Department of Treasury, Department of Veterans Affairs, and various other agencies, whereas its old systems and processes were archaic.

8. The United States of America, and its Agencies, in particular, United States Patent and Trademark Office ("USPTO"), Patent Trial and Appeal Board ("PTAB") are in breach of contract with the Plaintiff/inventor and injured Plaintiff personally and financially; and engaged in a conspiracy to violate the Constitution and deprived Plaintiff of her due process rights [to collecting unfettered from Corporate and other Infringers of her patents during the temporary monopoly period of exclusive rights to collect; and, to docketing her pleadings and Notice to Cease and Desist from Violating the Law of the Land and Motion to Recuse PTAB Judge McNamara due to his direct stock holdings in Microsoft and subject matter conflicts of interest.] and Constitutional rights [to protection from the USPTO and PTAB to uphold 'Patent Prosecution History Estoppel' and U.S. Supreme Court Chief Justice Marshall's 'First Impression' Constitutional *Res Judicata* ruling in *Fletcher v. Peck*, 10 U.S. 87 (1810) on Government Grants that cannot be quashed.] and deprived her of her rights under color of law and authority in violation of 18 U.S.C. §242, violated Plaintiff's liberty interests and property interests invoking due process protection and committed acts of violation of the Law of the Land and laws of the United States of America, enumerated *infra*.

9. **The question in this case is precisely the same as the issues decided by the U.S. Supreme Court in *Fletcher v Peck* (1810), *Dartmouth College v Woodward* (1819), *Grant v Raymond* (1832), *Shaw v Cooper* (1833), *Bonita Boat Inc. v Thunder Craft Boats Inc.* (1989); collectively, imposing a constitutional duty upon all adjudicating Convening Authorities to enforce 'The Law of the Land' respecting government grants. Defendant**

Andrews' erratic and disparate treatment of Plaintiff caused medical injury, financial damage and property damage; At issue is **whether the USPTO for extending venue*[d]* application of its 'Pre-award Reexamination' processing of public requests for patentability reconsideration, _overtly_ to existing 'Patented Grants' was _corruptly_ designed   prior to the Legislative attainment of 'The America Invents Act' [_Collusively_, operating unconstitutionally to Legitimizing the process of rescinding granted patents.]; _with_, precision and particularity *(as administrative misfeasance)* establishing procedural formal _avoidance_ for the USPTO/PTAB 'Revolving Door' Adjudicators to not consider *[t]*he *'Patent Prosecution History Estoppel'* protective contract provision attaching and regularly considered by solemn Obligation of Contract right in granted patent controversy; _in furtherance_, by the USPTO/PTAB remaining silent respecting the Patent Prosecution History Estoppel *(as adjudicative malfeasance)* establishing plausible deniability for the 'Vested Interest' judicial Officers [Defendants Andrews, Stark, Robinson and Laporte, to name a few]**  consciously not considering the Patent Prosecution History Estoppel protection *(as judicial nonfeasance)* required to unconstitutionally rescind the granted patent under color of non-patentability venue[d] on the pre-award process where Patent Prosecution History Estoppel does not apply, amounts to subversion of the duty to protect and enforce the law of the land. Ancillary issues relative to the Scheme are:  whether a post grant patent can be Legislatively venue[d] by a pre-award non-infringement process by the USPTO to its administrative appellate board for consideration in denying patentability for any reason without constituting _misfeasance_ of office;   and whether adjudicating a post grant patent by a venue[d]  Administrative and Judicial Officers [Defendants Andrews, Stark, Robinson**

**and Laporte]  can invalidate a granted patent without considering the 'Patent Prosecution History Estoppel' venued by a non-infringement process by the USPTO itself.**

10. Defendants Andrews, Stark and Laporte deprived Plaintiff from an oral hearing  in Case numbers 16-281-RGA(D.Del.), 14-490-RGA (D.Del.),  16-00023-EDL (N.D.CA),12-282-RGA(D.Del.)   and arbitrarily dismissed the cases, without avenues of redress,  without a hearing;

11. Defendant Andrews    retaliating against Plaintiff for her exercise of constitutionally protected rights caused medical, personal and financial injury to Plaintiff;

12. Defendant Andrews denied  Plaintiff due process in not allowing her to substitute as Plaintiff in the *JPMorgan* Case 1.12-cv-282 (D. Del) and in the Fulton case 1:14-cv-490-RGA (D.Del.) when the Plaintiff is the rightful assignee and patent owner of the patents-in-suit and deprived her of procedural  avenues to seek redress;

13. Defendants Andrews and Laporte engaged in obstruction of justice, tampered with material evidence and personally, medically and financially injuring Plaintiff and her protected property interests.

**14.** Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 through 100, inclusive, when Plaintiff ascertains the identity of such Defendants. Plaintiff is informed and believes, and thereon alleges, that each of these Defendants is responsible in some manner for the acts and omissions which damaged Plaintiff, and that Plaintiff's damages as alleged herein were proximately caused by their actions or omissions.

## II. JURISDICTION AND VENUE

15. This case belongs in federal court under federal question jurisdiction because it is about

federal law(s) or right(s), detailed *infra;* 28 U.S.C. §§ 1391(b), 1391(c), 1331, 1337(a), 1338

and 1400 (b). Defendants committed acts, under the color of law and custom with the intent

and for the purpose of depriving and deprived Plaintiff of rights, privileges and/or

immunities secured under the Constitution and the laws of the United States and injured

Plaintiff personally and financially; Defendants Andrews' and Stark's erratic, arbitrary,

irrational and precipitous dismissal of the Fulton Bank case 14-490-RGA

(D.Del.) and 16-281-RGA(D.Del.) and 08-132 and 09-133-EGA (D.Del.)

without a hearing and actions that "have so far departed from the accepted and usual

course of judicial proceedings;" by their actions and inactions, Defendants Andrews,

Stark, Laporte violated substantive liberty rights to "personal immunities" that are

"fundamental," that is, "implicit in the concept of ordered liberty," with the prototypical

"police brutality" in which the violations have "shock[ed] the conscience;" retaliating against

Plaintiff for her exercise of constitutionally protected rights. Defendants engaging in

conspiracy and obstruction of justice. This Court has subject matter jurisdiction pursuant to

FRCP Rule 60 (b) and 60 (d), 28 U.S.C. § 1491 and 18 U.S.C. §242: it hears claims for

monetary damages that arise from the United States Constitution, federal statutes, with the

United States Government. Venue is proper in this Court. Plaintiff further invokes the

supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to hear and adjudicate state

law claims, only if they so apply. Each and all of the acts (or threats of acts) alleged herein

were done by defendants, or their officers, agents, and employees, under color and pretense

of the statutes, ordinances, regulations, customs and usages of the states such as Delaware, California, and/or also of the laws of the United States.

16. Plaintiff Lakshmi-Arunachalam, Ph.D. is, and at all times herein mentioned a California resident and an individual residing at 222 Stanford Avenue, Menlo Park, CA 94025 and the sole inventor/owner of early Internet patents (11 patents). These horizontal patents relate to real-time Web transactions from Web applications, such as for example, Web banking, social networks, that large enterprises, mid-sized and small businesses use in Web banking applications, online travel, online business applications on the Web, mobile applications, Web applications in vertical markets. At all times relevant to this action, Plaintiff has resided in California when she invented the inventions in her patents, when she did experimentation to create prototypes of the patented technology, and installed it at beta sites in California, such as Cisco, Stanford, and many others. She founded several start-ups and is an Internet pioneer. She has been at the forefront of innovation in Silicon Valley. She founded her first company, Pi-Net International, Inc. ("Pi-Net") in California in Silicon Valley in 1990, and incorporated Pi-Net as a C corporation in California in January 1991 and continued doing business in California for over 24 years with an address at 222 Stanford Avenue, Menlo Park, CA 94025. Defendants' misconduct caused the loss of Plaintiff's business. Pi-Net's approximately 100 customers, are in California. She provided software solutions to complex business problems that needed a technological solution, invented and developed Web applications such as Web banking and other business Web applications, even prior to 1995, when one-way Web browsing was the norm and sophisticated solutions like Web banking did not exist. She raised venture capital in California for her companies. She founded her second company in Silicon Valley, California, WebXchange, Inc., a Delaware

corporation, headquartered in California and registered in California to do business in and

from California with its principal offices in California at 222 Stanford Avenue, Menlo Park,

CA 94025. <u>Plaintiff has provided employment to many employees in California during her</u>

<u>28 years of being an entrepreneur and running her companies in California.</u> At all times

relevant to this action, Lakshmi-Arunachalam, Ph.D.  has resided in California and ran her

companies and  when she invented and wrote her 13 patents and patent applications, raised

venture capital, hired employees, when she did experimentation to create prototypes of the

patented technology, and installed it at beta sites in California, such as Cisco, Stanford, etc.

Lakshmi-Arunachalam, Ph.D.  continues to work in California in patent litigation related to

the assertion of her many patents, with many infringers and defendants in California, such as

Wells Fargo Bank, and many others. Lakshmi-Arunachalam, Ph.D.  has currently over 12

patent infringement cases, many of which are in California. At all times relevant to this

action, Lakshmi-Arunachalam, Ph.D.  has been working in patent litigation, patent appeal

work, patent prosecution, on 12 or more patent re-exams, IPR/CBM reviews, all performed

here in California in San Mateo County.  A substantial part of the property that Plaintiff is

suing about is located in California. All her intellectual property is in California. A

substantial part of the events Plaintiff is suing about happened in this district in California.

Hence, this district is the proper location to file this lawsuit.

17. Throughout this time, Plaintiff resided in California while the various events related to patent

assertion, patent litigation, patent prosecution, patent re-exam and IPR/CBM work were

being conducted in and from California.

18. This Court has personal jurisdiction over the Defendant(s) by virtue of its/their business

activities within this judicial district. Defendant Laporte transacts business within the state of

California and within this District, and is subject to the personal jurisdiction of this Court. Defendants committed the acts in violation of the laws of the USA within the state of California and Delaware. The Court has personal jurisdiction over Laporte, who has purposefully availed herself the privileges of conducting business in the State of California and has sought the protection and benefits of the laws of the State; and regularly conducts business within the State of California; and Plaintiff's causes of actions arise directly from Defendants' business contacts and other activities in the State of California. The bulk of the events and a substantial portion of the work and events occurred in California.

19. <u>Venue is proper in this judicial district pursuant to Defendants' violation of the U.S. Constitution and breach of public trust and fraud on the public and other causes of action, detailed *infra*;</u> 18 U.S.C. §242, 28 U.S.C. §§ 1391(b), 1391(c), 1331, 1337(a), 1338 and 1400 (b).  Venue is appropriate in this Court because a substantial part of the property that Plaintiff is suing about is located in this district and a substantial part of the events Plaintiff is suing about happened in this district.  Defendant Laporte transacts business within the state of California and within this District, and is subject to the personal jurisdiction of this Court. This Court is vested with jurisdiction of this case pursuant to California Code Ann. Sec. 78A-5-102(1). Venue is proper in this court pursuant to California Code Ann. 78B-3-304 and -307.

## III. INTRADISTRICT ASSIGNMENT

20. This lawsuit should be assigned to San Jose Division of this Court because the San Jose Division covers Santa Clara County. Plaintiff lives in San Mateo County.

## IV. BACKGROUND AND FACTS

21. Lakshmi-Arunachalam, Ph.D. incorporates and re-alleges paragraphs 1-20.

22. **DEFENDANTS VIOLATED THE CONSTITUTION, BREACHED PUBLIC TRUST:**

23. Case involves Defendants' lawless indifference to U.S. Supreme Court Chief Justice

Marshall's 'First Impression' Constitutional *Res Judicata* ruling in *Fletcher v. Peck*, 10 U.S.

87 (1810) prohibiting quashing Government 'Grants,' — the Law of the Land — allowing

Corporate America to steal Plaintiff/inventor's patents (1995 Patent Grant), committing fraud

on the public, breach of public trust and aiding and abetting the USPTO in breach of contract

with Plaintiff/inventor; and judges with financial interests quashing inventor's pleadings and

denying Plaintiff due process. Chief Justice Marshall established the *'1ˢᵗ Impression*

*Prohibition'* against government from rescinding a grant once issued.  This precedent ruling

has withstood constitutional encroachments over decades *(intermittently to date)*. The U.S.

Supreme Court defended *(and protected)* the **"faithful execution of the solemn promise**

**made by the United States,"** the logic of sanctity of contracts and vested rights directly to

federal grants of patents under the IP Clause,  Contract Clause, the Separation of Powers

Clause, the Public Interest/Welfare Clause, the Due Process and Equal Protections Clauses;

from, legislative attainders and *[t]*oday's 'Revolving Door' erroneous and *ultra vires*

renditions of the lower judicial [Defendants Andrews, Stark, Robinson and Laporte]  and

administrative tribunals [Ignorance, indifference, or sincere confusion.] attempts to make an

exception to the Constitutional precedent decision of the U.S. Supreme Court. J. Marshall's

ruling has been re-affirmed by the U.S. Supreme Court and lower Courts.  AIA and

**Defendants' Orders are unconstitutional because they are laws "impairing the**

**obligation of contracts within the meaning of the Constitution of the United States."**

"But if an act be done under a law, a succeeding legislature cannot undo it. The past cannot

be recalled by the most absolute power." "Legislatures can pass NO ex post facto law. An ex post facto law is one, which renders an act punishable in a manner in which it was not punishable when it was committed. Federal Circuit precedent holds to the contrary. Congress supplemented Patent Laws with AIA since Justice Marshall's ruling in *Fletcher*. **Federal Circuit and District Courts [Defendants Andrews, Robinson, Stark and Laporte] were inattentive to the Contract Clause of the U.S. Constitution. The Courts [Defendants Andrews, Robinson, Stark and Laporte] and the USPTO departed from Patent Prosecution History Estoppel which propagated and caused them to rule to the contrary.** The question in this case is thus precisely the same as the issue decided in *Fletcher*: Whether the Contract Clause of the U.S. Constitution is the sole and exclusive provision governing patent infringement actions and is not to be altered or compromised, supplemented or supplanted by AIA or by **Defendants Andrews, Robinson, Stark and Laporte's Orders** in any respect, without usurping separation of powers. The Courts and USPTO/PTAB have been ruling as though AIA (albeit, unconstitutional) were the sole and exclusive provision governing jurisdiction in patent infringement actions and is not to be supplemented by the Contract Clause of the U.S. Constitution, (which rulings are unconstitutional). The Contract Clause of the U.S. Constitution compels the Courts and USPTO to ensure without compromise Patent Prosecution History Estoppel contract provision application to granted patents [Defendants Andrews, Stark, Robinson and Laporte failed to do so]. Protecting and representing Corporate Infringers is not within the purview of that protection to the Plaintiff/inventor and is *prima facie* evidence of breach of public trust, and breach of Oaths of office in treason to the Constitution and USPTO's breach of contract with Plaintiff/inventor, for which they should be prosecuted. The Constitution of the United

States declares that "no State shall pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts." The case now under consideration come within this prohibitory section of the Constitution. Defendants' rescinding act has the effect of an ex post facto law. It forfeits the estate of the Plaintiff/inventor for a crime not committed by the Plaintiff, but by the adjudicators, PTAB, USPTO, CAFC, District [Defendants Andrews, Stark, Robinson and Laporte] and Circuit Courts. "This cannot be effected in the form of an ex post facto law or bill of attainder; **why, then, is it allowable in the form of a law annulling the original grant**? J. Marshall declared in *Fletcher* that the Government or the Courts [in this case, Defendants Andrews, Stark, Robinson and Laporte] cannot pass a law absolving itself from the USPTO's contract with Plaintiff/inventor and "**that a State does not possess the power of revoking its own grants**." "When the legislature have once conveyed their interest or property in any subject to the individual, they have lost all control over it; have nothing to act upon; it has passed from them; is vested in the individual; becomes intimately blended with his existence, as essentially so as the blood that circulates through his system."

24. **DEFENDANTS — DUTY BOUND TO UPHOLD J. MARSHALL'S SUBSTANTIVE PATENT MANDATES — VIOLATED THEIR OATHS OF OFFICE:**

25. Defendants and lawyers, judges, and other administrative line and staff public officials failed in their sworn duty to protect and defend the United States Constitution and violated their Oaths of office. When the U.S. Supreme Court ruled in *Fletcher v Peck*, (1810), Chief Justice Marshall found on the two material issues — both contemptuously ignored in the instant case depriving Plaintiff (fundamentally and substantively) of her rights. *First,* that a Grant is a contract. *Second,* that once the Government issues a Grant, it cannot rescind it. This has

been the 'The Law of the Land' and all sworn officials are duty bound to uphold these substantive patent mandates; or, find themselves <u>without jurisdiction and without immunity and treasonably at war with the Constitution</u>. Defendants Andrews, Stark, Robinson and Laporte are therefore without jurisdiction and without immunity and have found themselves treasonably at war with the Constitution.

26. **J. MARSHALL'S RULING IN *FLETCHER* HAS A 'CHILLING EFFECT' ON THE CURRENT PRACTICE OF ADMINISTRATIVELY STEALING AND QUASHING OF GRANTS:**

27. Plaintiff and USPTO entered into a binding 'Government Contract' after examining and identifying the construction and applications of Plaintiff's inventions and issued a Patent Grant with 'Patent Prosecution History Estoppel' fundamentally attaching. USPTO breached its contract by allowing Corporate Infringers to steal and use Plaintiff's patents to unjustly enrich themselves in the trillions of dollars without notice and defending them contrary to public trust.

28. **William E. Simonds, the U.S. Patent Office Commissioner from 1891 to 1892, wrote in Manual of Patent Law (1874) and A Summary of the Law of Patents (1883) that "<u>A Patent is a Contract between the inventor and the Government representing the public at large</u>." J. Marshall declared:** "It can require no argument to prove that the circumstances of this case constitute a contract." This is *prima facie* evidence that Defendants committed treason in not upholding J. Marshall's rulings that are Constitutional precedents. J. Marshall declared in *Dartmouth College v. Woodward* (1819) that: "Surely, in this transaction, every ingredient of a complete and legitimate contract is to be found. The points for consideration are, 1. Is this contract protected by the Constitution of the United States? 2. Is it impaired by the acts under which the Defendants hold?" The answers are

"yes" to both questions. Defendants clearly violated Plaintiff's right to property. Like J. Marshall stated in *Dartmouth*, "**Circumstances have not changed it. In reason, in justice, and in law, it is now what is was in 1769...The law of this case is the law of all...** The opinion of the Court, after mature deliberation, is that **this is a contract the obligation of which cannot be impaired without violating the Constitution of the United States...**It results from this opinion that the acts of the" Defendants Andrews, Robinson, Laporte and Stark "which are stated in the special verdict found in this cause are repugnant to the Constitution of the United States, and that the judgment on this special verdict ought to have been for the Plaintiff/inventor. The judgment of the" Defendants Andrews, Robinson, Laporte and Stark "must, therefore, be reversed." There are two questions for this Court to decide: Is the patent grant of Plaintiff a contract? If it be, do the Defendants' Orders in question impair its obligation? The answer is unequivocally a 'Yes' to both. If a doubt could exist that a grant is a contract, the point was decided in the case of *Fletcher v. Peck.* If, then, **a grant be a contract within the meaning of the Constitution of the United States**, J. Marshall stated: "these principles and authorities prove **incontrovertibly that**" a patent grant "**is a contract.**" J. Marshall declared that any acts and Orders by Defendants Andrews, Stark, Robinson and Laporte that impair the obligation of the patent grant contract within the meaning of the Constitution of the United States **"are consequently unconstitutional and void."** As J. Marshall concluded, "The predicament in which this Court stands in relation to the nation at large is full of perplexities and embarrassments. It is called to decide on causes between citizens of different States, between a State and its citizens, and between different States. It stands, therefore in the midst of jealousies and rivalries of conflicting parties with the most momentous interests confided to its care. Under

such circumstances, it never can have a motive to do more than its duty, and I trust it will always be found to possess firmness enough to do that." **The Constitution of the United States declares that "no State shall** pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts." The case now under consideration comes within this prohibitory section of the Constitution. The Orders by Defendants Andrews, Robinson, Laporte and Stark violate the U.S. Constitutional and constitute treason. J. Marshall declared in *Fletcher*: "It would be strange if a contract to convey was secured by the Constitution, while an absolute conveyance remained unprotected...This rescinding act" [of Defendants Andrews, Robinson, Laporte and Stark] "would have the effect of an ex post facto law. It forfeits the estate of" Plaintiff "for a crime not committed by" Plaintiff, but by the Adjudicators, namely, Defendants Andrews, Robinson, Laporte and Stark by their Orders which "unconstitutionally impaired" the patent grant contract with Plaintiff/inventor, which, "as in a conveyance of land, the court found a contract that the grant should not be revoked."

29. **DEFENDANTS AIDED AND ABETTED THE USPTO IN BREACHING ITS PATENT CONTRACT WITH PLAINTIFF/INVENTOR BY: (a) FAILING TO ABIDE BY PATENT PROSECUTION HISTORY ESTOPPEL, A MATERIAL PROVISION OF THE PATENT GRANT/CONTRACT:**

30. Defendants breached their duty and 'Professional Oath' in *continuing* their assault on the United States Constitution by wanton and willful indifference to *'The Law of the Land.'* USPTO's *'Breach of Contract'* with Plaintiff was further reinforced by Defendants not abiding by *'Patent Prosecution History Estoppel.'* Defendants engaged in a conspiracy with the USPTO and authorized the theft of Plaintiff's patents. USPTO authorized the theft under color of America Invents Act (AIA) (and pre-AIA re-examination), its ill-application and unconstitutional 'Reexamining – Quashing' of 'Granted Patents.'

31. **DEFENDANTS AIDED AND ABETTED THE USPTO, WHICH HAS BEEN BREACHING ITS CONTRACT WITH PLAINTIFF/INVENTOR BY QUASHING PATENTS LONG BEFORE AIA:**

32. Defendants aided and abetted USPTO and PTAB, who have been quashing patents prior to the AIA and <u>allowing [Revolving Corporate America.] to steal patents; then, representing the 'Corporate Thieves' moving to quash a granted patent</u>; and, Defendants and USPTO collusively failed to uphold 'Patent Prosecution History Estoppel.'

33. For the deprivation of Government Contract patent rights rescinded under color of judicial pretense of honoring the Oath of office and upholding the Constitutional *Res Judicata* application on the case, <u>Defendants lost their adjudicative decisions and orders, jurisdiction over the case and immunity from personal liability to Plaintiff.</u>

34. Defendants aided in the breach of Government contract and the public trust (collectively) under color of adjudicating authority — in contemptuous operations of law; ***avoiding***, Constitutional *res judicata* applications to 'processes' and 'procedures' imposed on the public trustee(s) and judicial official(s).

35. Defendants deprived Plaintiff of fair and just access to the courts and justice upon the question of due process itself [by waging war on the Constitution itself.]. The breach of Government contract is associated with compromised individual Oaths of office (and profession).

36. The Court must take 'judicial notice' of the treasons resulting from Defendants adjudicating the rescission of Plaintiff's granted patent(s) ignoring the prohibition established in *Fletcher v Peck* (1810) J. Marshall finding a Grant to be a contract and setting the 'First Impression' precedent estopping the Government and the courts and judges from rescinding a Grant once issued. Defendants deprived Plaintiff of Constitutional due process application to contractual

rights; and removed the Constitutional '*res judicata*' provision applicable in each case and court;   and demonstrated their adjudicating (genuine) contempt for imposed rights and obligations; and failed to  enforce the U.S. Constitution; and without accountability (and with the ability to more likely than not, continue adjudicating in contempt of Supreme Court 'First Impression' precedents).

37. **The construction and terms of Plaintiff's patents were cast in stone by the USPTO after examining and granting a patent by contract with Plaintiff;** containing, the 'Patent Prosecution History Estoppel' provision-protection against infringement.

38. **DEFENDANTS' VIOLATION OF THE CONSTITUTION CAUSED HARM TO PLAINTIFF FOR WHICH DEFENDANTS SHOULD PAY:**

39. Corporate Infringers stole Plaintiff's patents and distributed its use to everyone including the U.S. Government, realizing __unjust enrichments in the trillions of dollars__.  Plaintiff LAKSHMI-ARUNACHALAM, Ph.D. is the inventor of "The Internet of Things (IoT)"— "Web Applications Displayed on a Web browser." JPMorgan's website and annual report state that it has over 7000 Web applications in one business unit alone, generating trillions of Web transactions per year. Defendants have deprived Plaintiff of the payment for each Web transaction/per Web application in use, which Defendants allowed Corporate America to steal.

40. **PLAINTIFF'S PATENTED INVENTIONS ARE MISSION-CRITICAL TO U. S. GOVERNMENT'S OPERATIONS, INCLUDING IMPROVING NATIONAL SECURITY.**

41. Plaintiff's patented inventions are in ubiquitous use worldwide, __allowing Microsoft, IBM, SAP, and the U.S. Government to make $trillions__ [Including investors with stock and money markets in the above Corporations (like the judges herein that have refused to recuse).].

42. Upon discovery of the Patent theft, Plaintiff sued the Corporate Infringers, whereupon Corporate Infringers moved to quash the patents by propounding a different construction and terms being applicable to Plaintiff's patents, in federal courts and USPTO/PTAB by filing re-examinations of granted patents in violation of J. Marshall's Constitutional precedent prohibiting the quashing of patent Grants. It was further discovered that the USPTO and PTAB were staffed with 'Corporate Revolving Door' Government associates in conflict of interest to the USPTO mission and its breach of contract with Plaintiff respecting protection of the construction and terms of the patent to prevail.

43. Former USPTO Director, David J. Kappos, was the former longtime Intellectual Property Counsel for IBM – the largest holder of patents — instrumental in procuring Government and commercial contracts. The conflict of interest toward supporting the economic agendas of large corporate holders of patents against small business inventors like the Plaintiff is palpable. The assignment of Defendants PTAB Judges Stephen C. Siu and Brian J. McNamara to Plaintiff's patent reexaminations operates under the same color of corruption. PTAB Judge Siu was formerly employed at both IBM (then Director Kappos' former employer) and Microsoft. PTAB Judge McNamara has direct stock in Microsoft, the Third Party Requester, as per his own Annual Financial Disclosure Statements, and yet stubbornly failed to recuse under the Ethics Rules at least regarding "appearance of conflict."

44. J. Marshall stated in *Fletcher*: **"When, then, a law is in its nature a contract, when absolute rights have vested under that contract, a repeal of the law cannot devest those rights."** **"...This pledge of the public trust is not only an implication of the sanctity of contracts; it is an implication of lawfulness itself."**

45. **Property rights and contracts rights are inseparable in the U.S. Constitution. The**

Constitution's Article I, Section 8 Intellectual Property Clause grants to Congress the power "To Promote the Progress of Science and useful Arts, by **securing for limited times to ...Inventors the exclusive Right to their ... Discoveries**." **Article I, Section 10 states: "No state shall... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts**."

46. **Patent rights are secured by a contract between the federal government and inventors**. **This sanctity of contracts is supported by:**

47. Marshall explained in *Fletcher*, the terms of the contract clause "are general, and are applicable to contracts of every description;" as in *Trustees of Dartmouth College v. Woodward* (1819); *Grant v. Raymond* applies the logic of sanctity of contracts and vested rights directly to federal grants of patents under the IP Clause.

48. **Supreme Court's Recognition of Public Contract Basis of Patent Rights in *Grant v. Raymond* (1832):** U.S. Supreme Court J. Marshall articulated the public contract basis of patent grants as "**indispensably necessary to the faithful execution of the solemn promise made by the United States**;"

49. J. Marshall stated, with regard to the Patent Acts of 1790 and 1793: "...the great object and intention of the act is to secure to the public the advantages to be derived from the discoveries of individuals, and the means it employs are the compensation made to those individuals for the time and labor devoted to these discoveries by the exclusive right to make, use, and sell the things discovered for a limited time...Clear specification or description of an invention in a patent application is therefore essential to proper tendering of consideration and to establishing the scope of the bargained-for protection....to secure exclusive rights in inventions and discoveries...to the inventor's exclusive enjoyment of his grant of patent

protection, "the public faith is pledged." "<u>The patent grant constituted the public's promise of</u> <u>potential financial returns to the inventor, which justice and right forbid he be deprived of…</u>"

50. *U.S. v. American Bell Telephone Company* (1897); **Justice Brewer concluded that the differences between the two types of patents give the federal government "higher rights" to cancel land patents than to cancel patents for inventions. "<u>…the patent for an invention is not a conveyance of something which the government owns</u>." As Brewer observed, "The inventor is the one who has discovered something of value. It is his absolute property….;"**

51. **<u>Supreme Court's Recognition of the Public Contract Basis of Patent Rights After *Grant v. Raymond*:</u>** *Shaw v. Cooper* (1833); Justice John McLean articulated the contract basis for patent rights; recognized the public benefit produced by inventive discoveries and the importance of securing protections for inventors in exchange for that benefit:

> "All enlightened governments reward the inventor. He is justly considered a public benefactor. Many of the most splendid productions of genius, …have been conceived and elaborated in a garret or hovel. Such results not only enrich a nation, but render it illustrious. **And should not their authors be cherished and rewarded?** …But in order that such property should be of any value, **it is necessary that society should interfere actively for its protection. It can interfere by the enactment of penalties, which, in order to be effectual, must be severe; or it can interfere by prohibition, which is a stern and summary exercise of power**."

52. *U.S. v. Dubilier Condenser Corp.* (1933);

53. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.* (1989);

54. James Madison in Federalist No. 44; "…**<u>Patent rights receive protection pursuant to public contracts between inventors and the federal government</u>, acting on behalf of the people." <u>Defendants have failed to provide the protections</u> pledged by the U.S. Government in its  Contract with Plaintiff.**

55. *Burrow-Giles Lithographic Co. v. Sarony* (1884); Justice Samuel Miller stated: **"On the one hand, grants of patents cannot, by law, be issued to the inventor until the novelty, the utility, and the actual discovery or invention by the claimant have been established by proof before the commissioner of patents...The public faith is pledged to the exclusive rights protections set out in the law upon the inventors' compliance with the corresponding procedures provided in the law**." <u>Plaintiff satisfied all these requirements before the USPTO granted Plaintiff her patents and continues paying her maintenance fees to the USPTO, in living up to her end of the Contract.</u>

56. **<u>Public Contract Basis of Patent Rights Applied by Lower Courts</u>:**

57. *Celluloid Manufacturing. Co. v. Arlington Manufacturing. Co.* (1890); Judge Edward T. Green of the District Court of New Jersey stated: <u>"The object of the patentee is to secure to himself complete control, the monopoly of his invention, and the use of it as a certain source of income. The object sought by the government is to obtain from the inventor a clear, definite, precise description of the invention for the public good. These constitute mutual considerations for the proposed contract evidenced in the letters patent."</u>

58. **Legal Treatise Writers Recognize the Public Contract Basis for Patent Rights:** William C. Robinson's The Law of Patents for Useful Inventions (1890); Robinson defined a patent as "a purchase by the government, acting on behalf of the whole people, of some new art or instrument, capable of beneficial use, <u>for which it recompenses the inventor by securing to him for a time its sole enjoyment.</u>"

59. Samuel Love Hopkins, in The Law of Patents and Patent Practice in the Patent Office and the Federal Courts (1911), described a patent as "the analogue of a contract." Hopkins wrote:

"The right created by their issuance is a public franchise, of which the letters patent are the grant."

60. Madison in Federalist Nos. 10 and 51 explained: "The extension, separation, and division of powers would <u>provide better security to</u> "[t]<u>he diversity in the faculties of men, from which the rights of property originate</u>."

61. Justice Brewer said: "…<u>**the contract basis for intellectual property rights heightens the federal government's obligations to protect those rights**</u>."

62. USPTO/PTAB have **_not_** been protecting the rights of Plaintiff/inventor, under color of re-examination under pre-AIA and AIA. Defendants have aided and abetted the USPTO in not protecting the rights of Plaintiff by failing to enforce the Constitution as per J. Marshall's ruling in *Fletcher* and failing to abide by Patent Prosecution History Estoppel.

63. **Defendants failed to ensure what Marshall described in *Grant v. Raymond* as a "<u>faithful execution of the solemn promise made by the United States</u>." The AIA provision to examine granted patents is inconsistent with the "<u>faithful execution of the solemn promise made by the United States</u>" and is void. Defendants' rulings in the *JPMorgan* Case 12-282 (D.Del.), *Fulton* case 14-490-RGA (D.Del.), *Fremont Bancorporation* case in 15-00023-EDL (N.D.CA), in the IBM *et al* case 16-281-RGA(D.Del.), in Cases 12-355-RGA(D.Del.), in the *Wells Fargo* case 13-1812-RGA(D.Del.), in the *CitiBank* case 14-373-RGA (D.Del.), in the *Kronos* case 14-00091-RGA(D.Del.), in the Dell and Fedex cases 08-132-RGA(D.Del.) and 08-133-RGA (D.Del.) and in the George Pazuniak malpractice case 15-259-RGA (D.Del.) are in violation of the U.S. Constitution and J. Marshall's 'First Impression' Constitutional Precedent in *Fletcher* and are inconsistent with the "<u>faithful execution of the solemn promise made by the United States</u>" with the**

1    **Plaintiff/inventor.**

2    64. **INSTEAD OF UPHOLDING 'THE LAW OF THE LAND,' DEFENDANTS (AIDING**
3    **AND ABETTING USPTO IN ITS BREACH OF CONTRACT WITH PLAINTIFF)**
     **AND ATTORNEYS FOR CORPORATE INFRINGERS; HAVE DEMONSTRATED A**
4    **CONTEMPT (IN BREACH OF OATH) TO ACKNOWLEDGE J. MARSHALL'S**
5    **'RES JUDICATA' DECISION.**

6    65. Defendants know and yet continue to war against the Constitution.

7    66. **HAMPERING DISCOVERY.**

8
9    67. Defendants continue to attack the Constitution, even after being put on notice to cease and

10   desist from violating the Supreme Law of the Land. Plaintiff encountered ignorant

11   opposition, lawless indifference, and direct denial of access to file the Discovery under color

12   of administrative policy, law and authority.

13   68. When the mission of the USPTO is so designed in promoting patent grants that *'Prosecution*
14
15   *History Estoppel'* is assigned in furtherance of protecting granted patents [In the public's

16   interest.]; when the same Adjudicating Agency is allowing [In Plaintiff's case representing a

17   private company in court to quash a granted patent.] patents to be unprotected in treasonous

18   breach of contract, the *'Oath of Administrative Office'* that existed when USPTO was
19
20   pursuing *'Public Interest'* objectives consistent with *'USPTO's Mission Statement' [For*

21   *which it is funded.] must still hold.* The erroneous and fraudulent decisions flowing from the

22   Delaware and Northern District of California District Courts and the USPTO/PTAB denies

23   'Due Process of Law' and procedure applied disparately; a 'First Impression' decision that

24   quashes what the entire USPTO and Defendants have been doing in violation of the Law of
25
26   the Land commands compliance forthwith.

27   69. Plaintiff is entitled to an unbiased tribunal. Defendants ignoring a *"First Impression"*

28   decision *[That is the cornerstone and hallmark of patent law itself.]* and moving to quash

patents, *for which there is no reasonable or just excuse!*; e*xtending,* onto the standard practiced here (Under color of law that compromises the integrity and wars on one's solemn Oath by continuing to *'Oppress the Discovery'* from those most in need of it; *by,* continuing consciously to denying or hindering  access to those needing to know. Direct denial of access to a court upon the question of due process itself or by hindering such access by making it difficult, expensive, or hazardous *[As here.]*, alike violate the Constitution. Plaintiff was injured through Defendants aiding and abetting USPTO's Breach of Contract, Defendants' corruption or fraud of the court or Defendants disposing of a case and is entitled to redress under the U.S. Constitution. Every American Citizen who has taken an 'Oath' to Protect and Defend the U.S. Constitution and its *Res judicata* Decision on point as 'The Law of the Land'; *must,* immediately move to protect it from treasonous encroachments; *the,* failure in not reporting or charging the encroachers makes one *(prima facie)* guilty of 'Misprision of Treason.' 18 U.S.C. Section 2382.

70. The U.S. Supreme Court, in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original]. By law, a judge is a state officer.  The judge then acts not as a judge, but as a private individual (in his person). Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the Supreme Law of the Land. The judge is engaged in acts of treason.

Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. *U.S. v. Will*, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); Defendants have been engaged in acts of treason;

71. Under Federal law, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are ... nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them... all persons concerned in executing such judgments ...are considered, in law, as trespassers." *Elliot v. Piersol*, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828). *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821); The U.S. Supreme Court stated: "No ... judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron*, 358 U.S. 1, 78 S. Ct. 1401 (1958). "If a judge does not fully comply with the Constitution, then his orders are void, s/he is without jurisdiction, and s/he has engaged in an act or acts of treason."

72. **Defendants breached the Public Trust and Individual Oaths of Office by allowing Corporate America to steal Plaintiff/inventor's patents** — Plaintiff, Lakshmi-Arunachalam, Ph.D., is the Inventor of "The Internet of Things (IoT)" — "Web applications displayed on a Web browser" (1995 Patent Grant) — **under color of law and authority by rescinding Plaintiff's granted patents** *(aiding and abetting USPTO's Breach of Contract) by ignoring the attaching 'Patent Prosecution History Estoppel')* **and** *de facto* **representing the Corporate thieves [Long before the passing of the 'America Invents Act' ("AIA") now authorizing the taking and quashing of patent grants.] by** *Official Malfeasance colored by Misfeasance,* **and lawless indifference to Constitutional Precedent;** <u>Defendants with financial interests not recusing and quashing inventor's</u>

pleadings and making it expensive, hazardous and burdensome for inventor to have access to justice; and Defendants as Federal Judges obstructing justice and abusing Plaintiff/inventor in judicial indifference to the Law of the Land harmed the Plaintiff.

73. **Defendants aiding and abetting the USPTO in breaching its contract with the Plaintiff/inventor by failing to enforce Patent Prosecution History Estoppel, violated a law that prohibits the quashing of patent Grants,** and even after being put on notice, contemptuously continue to date to represent Corporate America in retroactively quashing patents *for* Corporate America.

74. Stephen Ybarra and Alfred Amistoso, who assist Defendant Laporte, failed to docket Plaintiff's filings, even Plaintiff's Notice to Cease and Desist from violating the Law of the Land, at the instructions of Defendant Laporte and denied Plaintiff access to justice. The Clerk of the Court of the Delaware District Court failed to enter default when Defendant Andrews failed to respond to the Summons in Case 16-281-RGA (D.Del.), aiding and abetting Defendants Andrews, Stark and USPTO/PTAB in their violations against the U.S. Constitution and thereby violated the U.S. Constitution and his Oath of office.

75. The Legislative History of AIA does not list J. Marshall's ruling in *Fletcher*. In passing the AIA (and pre-AIA re-examinations), the Legislative Branch ignored J. Marshall with regard to Patent properties.

76. **DEFENDANTSJ AS JUDGES VIOLATING THE CONSTITUTION AND OATH OF OFFICE COMMITTED TREASON, LOST SUBJECT-MATTER JURISDICTION AND ORDERS ARE VOID.**

77. Unless Defendants can overturn J. Marshall's Decision, they have no case to adjudicate; and, one to uphold by and consistent with their Oaths of Office, or Attorney License; and ministerial obligations.

78. Any decision encroaching on the U.S. Constitution by violating their Oaths of Office or License in violation of finding law contrary to the Law of the Land respecting granted patents is void and non-enforceable for want of forfeiting jurisdiction; along, with any immunities for their individual assaults on the 'documents' filed by Plaintiff, which Defendants aided and abetted the Courts to fail to docket and thereby withheld material facts and material evidence integral to the case; therefore, Defendants' rulings and District Court Orders are void.

79. **<u>Claim construction once examined and granted cannot be revoked (because it alters the contract entered into) and must be protected by 'Patent Prosecution History Estoppel' by contract</u>**.

80. Defendants' failure to enforce their duty in applying imposed 'Patent Prosecution History Estoppel' voids findings of unpatentability on the one hand [As related to the patent grant at issue: Herein respectfully requested to correct the constitutional compromise forthwith.]; to achieve an object in breach of public trust and void by operation of law the taking of patent Grants once issued [Compelling immediate correction.] on the other hand.

81. Defendants knew (or should have known) that they were aiding and abetting the USPTO operating in Breach of Contract and their own breach of their Professional Oath, in violation of the public trust and USPTO mission. Rather than protect patented rights, they are quashing them. But for the Defendants' Malfeasance and Nonfeasance, <u>their non-conformance with J. Marshall's 'First Impression" Constitutional Precedent and failure to uphold Patent Prosecution History Estoppel the reexamining provision is unconstitutional</u>.

82. **Corporate Infringers argued irrelevant and falsely alleged collateral estoppel based on decisions fraudulently procured by JPMorgan Chase & Company in Case 12-282**

**(D.Del) and CAFC Case 14-1495 hiding material evidence of Patent Prosecution History Estoppel** by propounding different construction and terms not applicable to the patent that is supposed to be protected by Patent Prosecution History Estoppel, which Defendants ignored, for example, stating that claims terms "means for switching…," "service network, " *et al* are indefinite when the original USPTO Examiner and the inventor had agreed on the claim constructions for these and other terms during the original prosecution of Plaintiff's Patent applications before her patent(s) were granted, inducing the courts to arrive at the wrong decision.

83. The issue here is about judges breaching their professional oaths: Defendants having allowed Plaintiff's patent(s) to be taken and used with its construction and terms having been examined by USPTO granting the patent.

84. Where Defendants are aiding and abetting USPTO in quashing Plaintiff's patents, USPTO's own examined granted patents containing acknowledged construction and terms (for their Corporate Clients) in breach of contract; propounding, AIA authorization instead of defending USPTO mission is an obvious fraud on the court; because, AIA's intent is stated for specific reason that does not imply authorization to abandon one's Oath regarding USPTO's Mission or quashing of granted patents for Corporate Clients.

85. SAP America, Inc.'s attorney admitted *Fletcher* has never been used to challenge the quashing of patent grants in CBM2016-00081in the re-examination of Plaintiff's '506 patent. Hence, by admission this is ***not*** a re-litigated issue and therefore, collateral estoppel was not applicable.

86. The fraud here is that Plaintiff's U.S. Patent No. 7,340,506 (the '506 patent) has already been twice reexamined (by Microsoft [Also losing twice in court to Plaintiff, which is not

mentioned or noticed to any court.] and is being reexamined as we speak by SAP America, Inc.  Notwithstanding the intent of enacting the AIA, does not imply implementation of its provisions is to quash granted patents; and, **certainly does not authorize continuing attack on a reexamined patent to continue until it is quashed; because, this is the factual fraud not clearly propounded to the Court by Corporate Infringers**.

87. Defendants quashing Plaintiff's patents is unconstitutional.  How can USPTO or Defendants quash USPTO's own granted patent after examination acknowledging the construction and terms of the granted patent [By contract.]?

88. **Patents are predicated on individual contract with USPTO**.  Its economic relation is to promote commerce in the public's interest; and, USPTO's Mission.

89. Defendants were so engrossed with the prospect of legally stealing patents, they all forgot that **application of Contract Law had to be considered**.  Are we to alter the axiom to "Ignorance of the Law, excuses Corporate America [Because the 'Corporate Revolving Door' has assigned Corporate America's own employees to USPTO and PTAB and Induced Judges as Investors?  AIA was enacted *by* Corporate America *for* Corporate America to continue stealing from USPTO by getting USPTO to Breach its Contracts with inventors — diminishing the Mission, Rhyme and Reason for USPTO.  If the intent of the AIA is as alleged here, it is not the intent published!  However, if wrong, then the Defendants and AIA had declared war on the Constitution by encroaching on precedent set by J. Marshall.  Like the Civil War, one side is treasonous as to the other.

90. USPTO does not have the authority to issue a patent — it has authority to contract for an invention [After it certifies its examination and verifies the construction and terms are not in conflict with any other filed patent.] by guaranteeing 'Patent Prosecution History Estoppel'

as to the patent Grant. **Thereafter, altering the terms of the contract by Legislative Enactment to correct [What? The construction and terms?] its own errors and reconsider its decision [In Breach of Contract?] after allowing Corporate America to steal (or infringe) the granted patent [Does this not violate Article III?].**

91. When the Supreme Court creates the Law of the Land, the Separation of Powers prevents the Legislative Branch from enacting law to get around the Law of the Land; without, a real social or economic need for reversing the Supreme Court's decision.

92. **DISPARITY HAS BEEN THE HALLMARK BY DEFENDANTS AND USPTO/PTAB.**

93. What is USPTO doing representing Microsoft anyway? Did Microsoft not lose twice to Plaintiff regarding the '506 patent? Is it mentioned anywhere by Corporate Infringers or USPTO? Why have Defendants now challenged the patent construction found when the Grant was issued in 1995? If it has not changed, Defendants should be defending USPTO's original construction; especially, since Microsoft lost twice in court challenging it! Because the process is used by Revolving Door Corporate Thieves to avoid infringement — protection by USPTO [By compelling USPTO and Defendants to defend for Corporate America under color of mandate by the AIA; dissolving USPTO's mission itself.].

94. Patents are only granted for a time certain after which it becomes public domain. The USPTO/PTAB and Defendants have made Plaintiff's patents Corporate Domain before the time certain expires (in breach of contract) under color of law and authority and reexamination process [Long before the enactment of the AIA attainder.]; applicable before a patent grant is issued. **USPTO/PTAB overtly moves (as representative for the Corporate infringers) against the granted patent before the Federal Circuit. This demonstrates a breach of contract becoming a breach of public trust in cohort association with the**

**patent infringers.**  In furtherance of the breach,  the  USPTO/PTAB and Defendants (remain silent (as fraud) on the Court  by withholding the material fact [Notwithstanding the constitutional prohibition.] that the granted patent's 'Construction and terms' are protected by 'Patent Prosecution History Estoppel;' more, than enough to **classify this process a 'Conspiracy under color of law and authority to deprive Plaintiff of the right to recover under the protection of 'Patent Prosecution History Estoppel' from infringers unfettered.**

95. The construction and terms (cast in stone by the USPTO) have not changed; the patent Grant is protected by 'Patent Prosecution History Estoppel'; and, The Supreme Court's "Chilling Effect Prohibition" (estopping government from rescinding grants once issued) for lawyers, Judges, and adjudicators to enforce and uphold this law of the land.

96.    This throws light upon the Defendants' part in the **scheme elevated to a "Conspiracy to deprive Protection Rights under color of law."**

97. Defendants willfully, wantonly, disparately failed to uphold *'Patent Prosecution History Estoppel'* provision despite U.S. Supreme Court's and CAFC rulings to the contrary.). *Instead, they altered (abandoned) it,* reversing the *'Burden of Proof;'* and protection *(materially)* in *'Breach of (Social) Patent Contract;'*  Plaintiff's fundamental and substantive right to a fair hearing converting procedural due  process into procedural unduly burdensome process.] making access to justice hazardous, expensive, and burdensome, directly violating de facto constitutional rights thereunder.

98. **DEFENDANTS' CLAIM CONSTRUCTIONS ARE IN CONFLICT WITH USPTO'S ORIGINAL CLAIM CONSTRUCTIONS DURING ORIGINAL PROSECUTION.**

99. Defendants are <u>collaterally estopped from claiming USPTO's original construction is correct</u> <u>and their current construction (or Microsoft's or SAP's or Corporate Infringers' current</u> <u>construction) is also correct</u> for conflicting purposes. ***This speaks for itself***! <u>The construction</u> <u>interpretation is found in the original examination. **Only** that interpretation applies.</u>

100.   Claim construction was established by USPTO when the patent grant was issued. That construction has not changed. Reexamination (protected by Prosecution History Estoppel, puts the burden on the USPTO, Corporate Infringers and Defendants to show that USPTO's original construction is different. In other words: What is the point of USPTO finding construction on a granted patent. Here, USPTO and Defendants arguing for their de facto, effectually is arguing against USPTO's own construction?

101.   **PATENT PROSECUTION HISTORY ESTOPPEL BARS ANY ESTOPPEL**

102.   'Patent Prosecution History Estoppel' established Plaintiff's patent claims valid, as the claim construction of the terms ruled indefinite by Defendants, was already established between the original examiner and the inventor during the original prosecution of the patent applications, before Plaintiff's patents 5,778,178; 5,987,500 and 6,212,556 were issued, over 17 years ago. SAP, Microsoft, JPMorgan, Fulton Financial Corporation, Fremont Bank and Corporate Infringers withheld this material fact.

103. **DEFENDANTS OFFER NO DEFENSE TO J. MARSHALL'S RULING ON 'FIRST IMPRESSION' CONSTITUTIONAL *RES JUDICATA*, NOR PATENT PROSECUTION HISTORY ESTOPPEL.**

104.   Defendants continue to wage war on the Constitution in violation of J. Marshall's ruling and Patent Prosecution History Estoppel, both of which Defendants failed to address ***and*** ***cannot, because they have no defense***. For Defendants' lack of defense and failure to address these significant issues integral to the case, and the admission noted in SAP's

Footnote 3 in its Reply to Patent Owner Lakshmi-Arunachalam, Ph.D.'s Response in Case

CBM2016-00081 — which this Court should take Judicial Notice of— which is a re-exam

of Plaintiff's 7,340,506 ('506) parent patent with the same priority date as the patents-in-suit

from the provisional application with S/N 60/006, 634 is enough reason for Defendants to

have found that invalidating Plaintiff's patent grant; amounts, to dismissing a constitutional

provision mandated to be considered.

105.   **DEFENDANTS AIDED AND ABETTED PTAB'S BREACH OF CONTRACT
       WITH PLAINTIFF/INVENTOR**

106.   Where the object is to void [Contrary to Constitutional precedent.] a 'Grant' previously

       issued in 1995; any, hearing or process to get around the law inherently is predicated on

       fraud and/or corruption. Constitutional precedent within the purview of a government 'Grant'

       inherently voids any adjudication contrary to it.  Unless, Defendants, PTAB and CAFC can

       show their Decisions included the 'Granted Patent' and 'Patent Prosecution History Estoppel'

       on a 'Collateral Estoppel' theory – their decisions must be found to be void.

107.   The pattern demonstrated by Microsoft [After twice losing in court against Plaintiff in

       Case Nos. C 08-05149-WHA (N. Dt. CA) (2/17/09) and 09-484-JJF (D.Del.)

       (10/30/09).] and SAP [Noticeably, with USPTO (withholding the material fact)

       representing Microsoft and SAP] is to quash the 'Grant' under color of artificial

       reexamination. <u>By operation of law, SAP, USPTO, PTAB, Defendants and the Federal
       Circuit are estopped from quashing Plaintiff's 1995 Patent 'Grant.'</u>

108.   **THE IMMATERIAL COLLATERAL ESTOPPEL**

109.   Defendants  and USPTO/PTAB rest upon an erroneous and fraudulent rendition of the

       factual basis of the case upon which past decisions are predicated, this presumption of fact is

designed to quash the 1995 PATENT GRANT as the naturally designed object of the fraud

on the court and their conspiracy [Which, in any case Defendants and PTAB know (or should

know) with respect to 'Grants' and the duty to take Judicial Cognizance thereof of

Constitutional precedent respecting 'Grants' and 'Patent Prosecution History Estoppel' as

*res judicata* contracting.

110.    **CONSTITUTIONAL PRECEDENT — THE LAW OF THE LAND — ESTABLISHED THAT THE GOVERNMENT CANNOT QUASH A GRANT. HOW CAN DEFENDANTS ACCOMPLISH THAT WHICH IS CONSTITUTIONALLY PROTECTED? OTHER THAN BY CONSPIRACY AND BREACH OF TRUST AND VIOLATION OF THEIR OATHS OF OFFICE AND VIOLATION OF THE CONSTITUTION AND USPTO's BREACH OF CONTRACT WITH PLAINTIFF AND FRAUD.**

111.    The fraud here is that all the decisions [Misfeasance, Nonfeasance, and Malfeasance.] are

predicated on failing to acknowledge Plaintiff's right to protect her granted patents [Per

Government Contract.] and by 'Patent Prosecution History Estoppel'; which, Defendants and

USPTO/PTAB [remain silent thereof.] now propounds on 'Artificial Reexamination' as

Collateral Estoppel thereto; in order to quash, 'Patent Prosecution History Estoppel'

[Quashing the Patent Grant.] — for Microsoft, SAP! Why? Because the platform value is

astronomical. They now have gotten the agency and judiciary to colorfully attempt to quash

the 'Grant' under color of reexamination, by ignoring 'Constitutional *Res Judicata*' as applied

to Government 'Grants.'

112.    At issue before the courts and USPTO/PTAB is Plaintiff's patent 'Grant'; **and, the only 'collateral estoppel' upon which Defendants, courts and USPTO/PTAB can rely upon is that estoppel not used to quash the 'Grant' provided.** Defendants and PTAB lack

jurisdiction or authority of any kind, for any reason, or upon any post-1995 examination over

the issued 1995 PATENT GRANT; supported, by Constitutional *Res Judicata*. Here, post-

grant review [Under color of reexamination.] inherently is estopped from rising to the level

of a post-grant review because it excludes the attaching 'Patent Prosecution History Estoppel'

notice; and the Constitutional precedent prohibiting a 'Grant' lawfully propounded to

inventor.  Defendants, SAP, Corporate Infringers and USPTO/PTAB keep tripping upon this

materially judicial fraud to achieve that which is constitutionally forbidden in the first place;

and, encroaching into the judiciary does not hinder or alter 'Patent Prosecution History

Estoppel' or the 'Grant,' no matter, how fair or unfair, competent or corrupt, the subsequent

judicial processes and procedures may be; because, they are systematically excluded by the

same jurisdiction USPTO/PTAB is in want of, regarding the quashing of a 'Grant' previously

provided. Defendants and PTAB judges are not immune, not where PTAB Constitutionally is

in want of authority to adjudicate. Defendants and Microsoft's and SAP's Attorney-in-Fact

[USPTO/PTAB] have failed to show that all issues are not in fact the 'Original Patent Grant.'

113.   All the remedies in the world are not applicable where the issue is prohibited from rising

by Constitutional Precedent!  Attempting to revoke a granted patent is constitutionally

prohibited without redress; and, therein is not specific procedure that must be followed only

than notice of and request for due process and equal protection for redress. Defendants' venue

and jurisdiction to quash Plaintiff's patent 'Grant' is constitutionally void by *res judicata*

precedent.

114.   **DEFENDANTS', PTAB AND  CAFC  ORDERS ARE VOID**

115.   Defendants cannot prove they have jurisdiction over J. Marshall's ruling. Jurisdiction and

authority to render decisions must each conform to law. "Jurisdiction can be challenged at

any time." *Basso v. Utah Power & Light Co.*, 495 F 2nd 906 at 910. "The law provides that

once ... Jurisdiction has been challenged, it must be proven." *Main v. Thiboutot*, 100 S. Ct.

2502 (1980). "Where there is absence of proof of jurisdiction, all administrative and judicial proceedings are a nullity, and confer no right, offer no protection, and afford no justification, and may be rejected upon direct collateral attack." *Thompson v Tolmie*, 2 Pet. 157, 7 L. Ed. 381; *Griffith v. Frazier*, 8 Cr. 9, 3 L. Ed. 471. "the burden of proving jurisdiction rests upon the party asserting it." *Bindell v. City of Harvey*, 212 Ill.App.3d 1042, 571 N.E.2d 1017 (1st Dist. 1991).

116. **DEFENDANTS AND PTAB AIDED AND ABETTED ANTI-TRUST VIOLATION BY LIMITING COMPETITION BY THEFT OF PATENTS BY TREASONOUS BREACH OF CONTRACT — A GRANT AND 'PATENT PROSECUTION HISTORY ESTOPPEL' ESTOP ANY ESTOPPEL — MATERIAL FACTS INTEGRAL TO CASE WITHHELD BY CORPORATE INFRINGERS, DEFENDANTS USPTO, PTAB, AND CAFC.**

117. "There can be no judgment or choice if a '"federal statute, regulation or policy specifically prescribes a course of action for an employee to follow," — a 'Grant' and 'Patent Prosecution History Estoppel' *cannot be voided by a judge*, per Justice Marshall's ruling, U.S. Constitution, article I, Section 10, clause 1 (the *Contract Clause*). Corporate Infringers withheld the 'Material Fact' that Plaintiff possesses an irrevocable 1995 PATENT GRANT, that she successfully defended from Microsoft's attempt to quash and take the patent, that IPR2013-00194; IPR2013-00195; CBM2013-00013; CBM2014-00018; and CBM2016-00081, in furtherance was initiated by SAP in cohort with PTAB predicated on [Known.] *ultra vires* filings by Corporate Infringers' attorneys and Sirbu [In breach of contract by USPTO/PTAB with Plaintiff]; in furtherance, causing injury by withholding from the Court material facts of a Patent 'Grant' protected by Constitutional *Res Judicata* and 'Patent Prosecution History Estoppel.'

118. **DEFENDANT ANDREWS IS DISQUALIFIED FROM PRESIDING DUE TO HIS DIRECT STOCK IN FEDEX AND JPMORGAN — IN COLLUSIVE *DE FACTO***

**CONSPIRACY (IN WHOLE OR IN PART) WITH CORPORATE INFRINGERS AND USPTO/PTAB.**

119.    At issue is whether invalidating  Plaintiff's U.S. Patent Nos. 6,212,556; 7,340,506; 8,108,492; 5,987,500; 8,037,158; [re-examined by USPTO, particularly when Defendant <u>PTAB Judge McNamara held direct stock in Microsoft, the Third Party Requester and did not recuse]</u> and Plaintiff's U.S. Patent No. 8,271,339 and  USPTO/PTAB and Defendants did not abide by Patent Prosecution History Estoppel upheld by the Supreme Court and CAFC, and did not uphold the Supreme Court's J. Marshall's Ruling  on 'First Impression' Constitutional Res Judicata on Government 'Grants,'  which cannot be revoked by the most absolute power dismisses PTAB's and CAFC's and Defendants' duty to uphold Constitutional res judicata; **and**, USPTO's contractual fiduciary duty to enforce its patent Grant award and the 'Patent Prosecution History Estoppel' attaching therefor; **amounts**, to judicial and administrative fraud, breach of contract with Plaintiff and treason and contempt for equal protections of law; **if so**, then USPTO/PTAB's and CAFC's and Defendants' decisions are void and  should be dismissed, and fundamental right of Plaintiff to Constitutional res judicata should be recognized.

120.    Defendants' decisions (all contrary to 'First Impression' application to 'Grants' themselves) cannot possibly be neutral; especially, where a financial interest exists [Legally.]; where [Morally or ethically.] any reasonable adjudicator would recuse oneself to avoid the appearance thereof [Legal fraud.]; more so, where the material fact [Being fairly entertained.] would impact the profits to direct stock in Microsoft, JPMorgan and Fedex upon which Defendants' monetary interests are vested. Defendants have direct stock in Microsoft, JPMorgan and Fedex as per Defendant Andrews' and PTAB Judges McNamara's  and Siu's

own annual financial disclosures, failed to recuse, voiding their Decisions.

121.    Plaintiff/inventor has a Constitutional Right to a fair appellate hearing respecting due process and equal protection of law, here *'Constitutional Res judicata'* which the courts are duty bound to enforce; and, *'Prosecution History Estoppel'* (*per* Plaintiff's Prosecution Histories of her parent U.S. Patent Nos. 6,212,556; 5,778,178 and 5,987,500, as if fully incorporated herein) which PTAB has a duty to protect per contract and Defendants have a duty to protect per Constitutional precedent of J. Marshall in *Fletcher*; *against*, alleged *'Collateral Estoppel Theory'* to *(fraudulently and unconstitutionally)* quash a government grant which the Constitution prohibits; *by*, colorfully-offering no defense to J. Marshall's ruling, and *by*, colorfully denying due process and equal protection of law *[As well as the question of due process itself.]*.

122.    Defendants in not preventing injustice, assented to the fraud and Defendant Andrews' and PTAB Judge McNamara's failure to recuse despite their financial conflicts of interest and direct stock in Microsoft and JPMorgan and Fedex and their denial of Due Process to Plaintiff, and their violation of J. Marshall's ruling and Patent Prosecution History Estoppel and waging war against the U. S. Constitution in treasonous breach of contract, and failed to have them be disqualified from presiding over Case Nos. IPR2013-00194; IPR2013-00195; CBM2013-00013; CBM2014-00018 and 16-281-RGA (D.Del.), 15-259-RGA(D.Del.), 12-282-RGA (D.Del.), 14-490-RGA (D.Del.) and all of Plaintiff's cases in Delaware District Court). Defendants violated U.S. Supreme Court's J. Marshall's Ruling and 'Patent Prosecution History Estoppel' and committed treason by violating the Law of the Land.

123.    In Plaintiff's patent infringement case against JPMorgan, 12-282-RGA (D.Del.),

Defendant Robinson ruled against Plaintiff, misled by JPMorgan's and Corporate Infringers' *ultra vires* filings withholding material facts of J. Marshall's ruling and 'Patent Prosecution History Estoppel.' Defendant Robinson failed to uphold Constitutional *Res Judicata* on 'Grants' and 'Patent Prosecution History Estoppel' and committed treason, making her rulings void.

124.    Judges Andrews, Robinson, Laporte failed to perform their duty to uphold and enforce the Constitution and breached their Oaths of Office, willfully, wantonly and fraudulently refused to uphold and enforce J. Marshall's Ruling and 'Patent Prosecution History Estoppel' previously upheld by the U.S. Supreme Court.

125.    Defendant Andrews admitted four years into the JPMorgan case 12-282-RGA (D. Del.) that he bought stock in JPMorgan. Defendant Andrews repeatedly refused to recuse in multiple cases involving Plaintiff's patents. Defendant Andrews denied Plaintiff due process and equal protection of the law, denied her access to justice and to the court itself.

126.    Defendant Andrews dismissed the *Fulton* Case No. 14-490-RGA (D. Del) based on a falsely alleged collateral estoppel.

127. **DEFENDANTS ARE ESTOPPED FROM PROPOUNDING *'COLLATERAL ESTOPPEL'* BECAUSE IT IS PREDICATED ON TWO SEPARATE COURT CASES; *EACH*, HAVING LESS TO DO WITH THE OTHER AS TO THE OBVIOUS LEGAL AND FACTUAL BASIS OF THE ADJUDICATION [SAVE UNCONSTITUTIONALLY QUASHING USPTO'S OWN GRANTED PATENT.]; *WHICH*, WOULD HAVE BEEN APPARENT HAD THE SUBSEQUENT COURT CARED ENOUGH TO ENTERTAIN BOTH ARGUMENTS [IN BOTH CASES.] WHEN CORPORATE INFRINGERS AND GEORGE PAZUNIAK MANUFACTURED THE COLLATERAL ESTOPPEL ARGUMENT [1].**

---

[1] It is noteworthy that a judge would take 'Judicial Notice' of a doctrine alleged to be the essence of an adjudication; without, taking notice of the factual and legal basis supporting the alleged doctrine! Seems unfair at least; culpably, reckless at best [Considering the factual pattern in that instant action.].

128.     Here, the initial adjudication [2] did not claim 'Collateral Estoppel'.  That doctrine was fraudulently manufactured in a subsequent adjudication wherein Corporate Infringers  and George Pazuniak corruptly and fraudulently  intimated was the operative fact in the initial case; *__and__*, which the subsequent court tricked itself into uttering the manufactured claim as fact; without, verifying its truthfulness [Not to mention the court knew or should have known that the doctrine was constitutionally void and inconsistent (in any case) with a Patent Grant and Patent  Prosecution History Estoppel]; failing, to question why PTAB was bringing a case against its own granted patent in the first place.

129.     **DEFENDANTS ARE  ESTOPPED FROM QUASHING USPTO'S OWN AWARDED PATENT GRANT BY CONSTITUTIONAL *RES JUDICATA*; *__AND__*, BECAUSE OF 'PATENT PROSECUTION HISTORY ESTOPPEL'; *__AND__*, IN ANY CASE ARE UNDER A CONTRACTUAL DUTY TO PROTECT THE AWARDED GRANT; *__OR__*, STAND BEFORE THE COURT IN BREACH OF CONTRACT AND PUBLIC TRUST.**

130.     *__After__* thorough examination [3] processing results in awarding a *'__Patent Grant__*,' it not only is protected by ***Constitutional Res judicata** [Which Defendants have a sworn duty to uphold.]*; *__but__*, it is further protected by ***'__Prosecution History Estoppel__'*** *[Which PTAB has a duty to uphold in defense of their awarded patent.]* by ***'Patent Contract'*** with Plaintiff [For the entire period of the terms delineated therein.].

131.     **DEFENDANTS' RULINGS ARE VOID**

---

[2] As all the adjudications, hallmarked by remaining silent [As Fraud.] regarding a granted patent (and protected by Patent Prosecution History Estoppel); under, color of a reexamination or otherwise  oppressing J. Marshall's Decision on grants; and, hallmarked by judicial processes and procedures [Complained of.] amounting to dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, and cruelty [Systematically.] as the acceptable judicial standard and whether Defendant Andrews  not recusing  because **of financial and relationship conflicts of interest in JPMorgan is De jure the acceptable standard; legally substituting a Public Fraud as a Due Process Hearing.**

[3] __REEXAMINATION:__ Of any kind, *(judicially or administratively)* fares no better on quashing a government grant once awarded for the same reasons.  Moving or entertaining on this subsequent theory demonstrates an *'__Abuse of the 'Post-grant Award' Process__'* as it applies to reconsideration; *__brought__*, by the inventor *(or any interested party)* where the initial application has been examined and denied by USPTO for want of patentability.

**132.** *It follows then*, that any process or procedure *(however fair)* that moves *(or is entertained)* to quash a granted patent protected by *'Patent Grant' and 'Patent Prosecution History Estoppel'* is; *'**Constitutionally Void**'*, by *Res judicata*; *contemptuously*, prejudiced by *(willful or wanton)* judicial breach of duty by Defendants *(on the one hand)*; *and*, where the Defendants and Corporate Infringers and PTAB (Ultra vires) are engaged in an artifice or scheme whose object is a (willful or wanton) deprivation of the Plaintiff/inventor of her Patent properties, to aid and abet antitrust violation by Infringers, in breach of the takings clause of the 5th Amendment without paying the Plaintiff/inventor valuable consideration (on the one hand) and the Defendants', PTAB's, USPTO's *(willful or wanton)* Breach of Public Trust and Contract (on the other hand).

**133.** *Prima facie* misfeasance, nonfeasance, or malfeasance contrary to Constitutional precedent, or in violation of Constitutional Mandates is not [Again.] within the purview of being within the scope of the judiciary; and, therefore is without immunity.

**134.** **'PATENT PROSECUTION HISTORY ESTOPPEL'** in Plaintiff's parent  U.S. Patent No. 6,212,556 (the '556 patent) already proves that the prior art cited by the original Examiner, namely, the Focsaneanu patent, was successfully overcome by the inventor during the original prosecution before the '556 patent was issued and granted by USPTO, after the original Examiner and the inventor agreed that the means for switching is an OSI Application layer switch, the value-added network switch, which is described in detail in the specification in columns 6-9 and in  Figs. 5B, 5C, 5D, 6A, 7 and 3. Likewise, about Plaintiff's parent 5,778,178; and 5,987,500 and '506 patents, where key claim terms were agreed to by original USPTO Examiner and Plaintiff/inventor.

**135.** Defendants waged war on the Constitution and failed to uphold the Supreme Law of The

Land and committed treason and are in treasonous breach of contract in failing to uphold the awarded Grant and impinged upon Plaintiff's right to Constitutional *Res Judicata* and equal protection of the law and lack jurisdiction, making those Orders void.

**136.** **Defendants have been put on notice, to cease and desist, to stop waging war against the Supreme Law of The Land** and to reverse all their Orders in all cases involving Plaintiff's patents. They continue to be in contemptuous and treasonous breach of contract of the awarded Grant, Defendants' Orders are void.

**137.** Defendants dismissed Plaintiff's Cases 8-132 and 8-133-RGA (D.Del.), 14-490-RGA (D.Del.), 15-00023-EDL (N.D. CA) without a hearing and denied Plaintiff her *due process procedural right to appellate review but which does not dismiss the Defendants' duty to uphold Constitutional res judicata; and, Defendants' fiduciary duty to enforce the patent grant award and the 'patent prosecution history estoppel' attaching therefor; amounts, to treason, judicial fraud and contempt for equal protections of law; Defendants' Orders are void as they are contrary to J. Marshall's ruling and Patent Prosecution History Estoppel and the Supreme Law of The Land and Defendant Andrews held direct stock in JPMorgan and Fedex.* Unless Defendants can prove that J. Marshall's ruling on 'First Impression' Constitutional *Res Judicata* on Government Grants and Patent Prosecution History Estoppel are void, this Court must find for Plaintiff.

**138. CHIEF JUSTICE MARSHALL'S RULING ON 'FIRST IMPRESSION' CONSTITUTIONAL *RES JUDICATA* AND PATENT PROSECUTION HISTORY ESTOPPEL BAR ANY OTHER ESTOPPEL AND THE ALLEGED COLLATERAL ESTOPPEL IS VOID IN VIEW OF J. MARSHALL'S RULING.**

**139.** Corporate Infringers failed to report that Microsoft lost to Plaintiff thrice; twice in two District Courts, in Northern District of California where Judge Alsup ruled that Microsoft

was using counterfeit logic to create a controversy where none exists, and in Delaware

District Court where Judge Farnan ruled against Microsoft and in favor of Plaintiff, and that

Plaintiff won two claims in the inter-partes re-examination against Microsoft in her

7,340,506 patent in the same patent portfolio as the priority provisional application with S/N

60/006,634 of 1995.

140.   Defendants have a duty to allow the discovery access to operate in the District Courts;

dismissing, the discovery amounts to a serious breach of trust and violation of the Supreme

Law of the Land.

141. **IT APPEARS NO ONE WANTS TO HEAR ABOUT A 'FIRST IMPRESSION' DECISION THAT QUASHES WHAT THE ENTIRE USPTO, CAFC AND DEFENDANTSHAS BEEN DOING IN VIOLATION OF THE LAW OF THE LAND COMMANDING COMPLIANCE FORTHWITH.**

142. **CONGRESS CANNOT REVERSE SUPREME COURT *RES JUDICATA* DECISIONS. PLAINTIFF/INVENTOR HAS SUFFERED FROM DEFENDANTS' GIVEAWAY OF PLAINTIFF/INVENTOR'S PATENTS; SURPASSED, ONLY BY THEIR MALFEASANCE AND CONTEMPT TO ENFORCE CONSTITUTIONAL PRECEDENT OF J.MARSHALL; INSTEAD, OF PROSTITUTING THE COURTS OUT TO CORPORATE AMERICA.**

143.   Defendants quashing Plaintiff's patents with their unconstitutional excitement coloring

their thefts to Corporate America and their encroachment of the precedent set by J. Marshall

prohibiting the quashing of Grants predicated on Contract Law for no good reason are more

than enough to amend in the Public's Interest; <u>otherwise, we have the Congress

overturning Supreme Court (*Res judicata*) decisions – that does not sound right</u>!!!

144. **Constitutional *Res Judicata* Prohibits PTAB from Depriving Inventors In Unconstitutional Post-Grant Reexams and Defendants staying cases pending re-exams.**

145.   The act of transferring the patent property of an individual to the public without

compensation to the inventor is not in the nature of the legislative power of the AIA or

judicial power of Defendants, in violation of J. Marshall's ruling on 'Grants' and violates

the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the

Takings Clause of the Fifth Amendment to the U.S. Constitution, without valuable

consideration and just compensation for patents.

146.    **No law can impair the obligation of contracts. All subsequent legislation is void where the object is to challenge a patent during the period of protection**. Any such legislation contrary to 'First Impression' Constitutional *res judicata* ruling by the Supreme Court on 'Grants' and voiding all patent grants, defeats the public purpose of USPTO. Such a process, as is currently being propounded by Defendants, is not constitutionally fair, as it denies Plaintiff/inventor due process and equal protection of law. Plaintiff's patents have astronomical value and are being used universally without permission and monetary compensation.

147.    Plaintiff's U.S. Patent No. 7,340,506/US 7,340,506 C1 ("'506 Patent"), with a priority date of November 13, 1995, re-emerged successfully against Microsoft from an *inter-partes* re-examination by the USPTO. Judge Alsup ruled against Microsoft, in Lakshmi-Arunachalam, Ph.D.'s favor in Case No. C 08-05149 WHA (N. Dt. CA) on 2/17/09: "Microsoft is using counterfeit logic to manufacture a controversy where none exists."

148.    Defendant **Andrews  retaliated against Lakshmi-Arunachalam, Ph.D. for her exercising her constitutional right to a neutral judge by striking her docket entries and denied her access to electronic filing, denied Plaintiff's motions to substitute as Plaintiff as she is the real-party-in-interest and assignee of the patents-in-suit, denied her motions to vacate Defendants' Orders as 'frivolous,' denied her motions to recuse the Defendants due to their conflicts of interest, dismissed her valid civil RICO case against**

**IBM *et al,* failed to answer the summons and colluded with the Clerk of the Court and prevented the entry of Default, and colluded with Defendant Stark in having the civil RICO case against Andrews dismissed claiming judicial immunity, even though he had violated his Oath of Office and failed to uphold the Constitution, dismissed Plaintiff's valid malpractice case against George Pazuniak and issued an Order stating that Plaintiff had caused delays in the case, despite his knowledge that Plaintiff had to undergo medical treatment when in medical distress, and despite the fact that Plaintiff had not failed to follow any court rules nor had she caused any delay. Defendant Andrews abused his discretion and dismissed the Fulton case 14-490-RGA** for no valid reason, misled by the fraud on the court by Corporate Infringers, their counsel and George Pazuniak who presented false statements to the Court and to the patent office. Defendant Andrews and Laporte made it expensive, hazardous and burdensome for Plaintiff to have access to justice and the courts by disparately denying her ECF filing. Defendants violated numerous laws in depriving Plaintiff of her rights under the color of law and authority. Defendants denied Plaintiff appellate review by refusing to substitute her as Plaintiff, when she is the assignee of the patents-in-suit and real party-in-interest.

149. **DEFENDANTS ENGAGED IN THE HEIST OF LAKSHMI-ARUNACHALAM, PH.D.'S PATENTS, WEB APPLICATIONS DISPLAYED IN A WEB BROWSER, INVENTED BY HER WITH PRIORITY DATE OF 1995, USED IN AND MISSION CRITICAL TO THE STATE DEPARTMENT, CIA, FBI, USPTO, PTAB AND ALL U.S. AGENCIES**

150.   <u>Defendant Robinson ruled that the claim terms "VAN switch," "means for switching" and "switching" are indefinite. This is contrary to fact, the record and the law,</u> because Defendant Robinson ignored the prosecution history, the prior art, the specification language and drawings.

151.   Defendant Robinson was misled by JPMorgan's counsel's willful obstruction of the fact-finding process, with <u>no basis in facts or the record  or the law,</u> as those terms they falsely alleged to be indefinite are **not** indefinite and are protected by Patent Prosecution History Estoppel, as per contract between the USPTO and the Plaintiff/inventor.

152.   This Court must note that "VAN switch" is a term coined by Lakshmi-Arunachalam, Ph.D., the inventor, and it is completely enabled and defined in the specification in columns 4, 5, 7, 8, 9, Figs. 7, 6A of the patents-in-suit, as well as the patent prosecution history. <u>Patent Prosecution History Estoppel prevents the patentee or the USPTO examiner or the PTAB or the Courts or Defendants  or opposing counsel or anyone from changing what had been agreed to between the Plaintiff/inventor and the original examiner during the original prosecution as to the construction and meaning of the term and what the Plaintiff/inventor had narrowed the meaning down to in order for the claims to be allowed and the patent to issue.</u> In the prosecution history of a parent patent, Lakshmi-Arunachalam, Ph.D.'s U.S. Patent No. 6,212,556 (" '556"), the original examiner had cited U.S. Patent No. 5,828,666 ("Focsaneanu") as a possible prior art. Lakshmi-Arunachalam, Ph.D. successfully argued that Focsaneanu did not serve as a valid prior art for the reasons detailed in the prosecution history, see *infra*.

153.   In Lakshmi-Arunachalam, Ph.D.'s parent 6,212,556 ('556) patent prosecution history, Lakshmi-Arunachalam, Ph.D., the inventor, **distinguished her inventions over the cited art, U.S. Patent No. 5,828,666 ("Focsaneanu")**. Defendant JPMorgan  willfully omitted that Prosecution History Estoppel already has established that the term "Value-added network switch," "VAN switch" is **not** indefinite and it **is** an OSI  application layer network switch, **not** a network layer switch; and that prior art is not only cited, but also discussed in

detail in the specification of the '500, '492 and '158 patents. The claim language, disclosure in the written description, and the meaning to persons of ordinary skill are fact-specific.

CAFC states:

> "cited art as intrinsic evidence for purposes of claim construction....<u>claims should be construed in view of the prosecution history's treatment of the prior art so as to determine what the applicant gave up in obtaining allowance of the claims...When prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to proper construction of the term, because it may indicate</u> not only the meaning of the term to persons skilled in the art, but also <u>that the patentee intended to adopt that meaning.</u>" *Arthur A. Collins, Inc. v. Northern Telecom Ltd*, 216 F 3d. 1042 (Fed. Cir. 2000)." (emphasis added).

154.    Excerpts, cited below, from the original prosecution history of the parent '556 patent show that the terms "VAN switch," "means for switching" and "switching" are **not** indefinite:

> "The Examiner has rejected claims 1-11, 34, and 41-54 under 35 U.S.C. § 102(e) as being unpatentable over Focsaneanu, U.S. Pat. No. 5,828,666 ("Focsaneanu").

> ### The Rejection of Claim 1 on Focsaneanu is Overcome

> The last Office Action rejected independent claim 1 on Focsaneanu. Claim 1 has been rewritten as new claim 55. Applicants request reconsideration of this rejection because Focsaneanu does not teach or suggest the structure described in the application, corresponding to the "means for switching" and "means for transmitting". Specifically, Focsaneanu does not teach or suggest an application-layer switch or a VAN switch. Claim 55 recites, "means for switching to a transactional application." As discussed in the application at pages 10-11 and 15-16, the "means for switching" is accomplished by using a VAN switch. As stated at page 15, lines 12-18:

> > "A user can connect to a local application, namely one accessible via a local VAN switch, or be routed or "switched" to an application accessible via a remote VAN switch. Switching service 702 is an OSI Application layer switch. Switching service 702 thus represents the core of the VAN switch. It performs a number of

tasks including the routing of user connections to remote VAN switches ..."

Focsaneanu does not teach or suggest application-layer switches. The Examiner has cited Focsaneanu's Access Module as the "means for switching". The Access Module contains a circuit and a database that are used to examine information in a service request and establish a route between the customer terminals and the service providers.

Specifically, based on the service request, circuit, and database, the Access Module selects and enables either a PSTN or Data Network to carry the communication traffic between the customer terminal and the service provider. These functions are characteristic of network-layer switches, not application-layer switches. The application explains the difference between the network and application layers of the OSI model at page 9. Regarding the network layer:

> "Network layer 303 allows any pair of systems in the network to communicate with each other. Network layer 303 contains hardware units such as routers, that handle routing, packet fragmentation and reassembly of packets."

This describes the functionality of Focsaneanu's Access Module, which performs routing over various types of networks between the client terminal and service provider systems. In contrast, the application layer is described at (page 9, lines 21-23):

> "Application layer 307 provides a means for application programs to access the OSI environment. As described above, the present invention is implemented to function as a routing switch in application layer 307"

Thus, application-layer switching is clearly foreign to the Focsaneanu patent. The Access Module is not concerned with accessing the OSI environment, but rather establish a route between the customer terminals and the service providers. Accordingly, Focsaneanu does not teach or suggest the structure of application-layer switches as the "means for switching to a transactional application".

Claims 56-66 depend from claim 55 and are believed to be allowable therefor as well as for the recitations independently set forth therein.

### The Rejection of Claim 6 on Focsaneanu is Overcome

The last Office Action rejected independent claim 6 on Focsaneanu. Claim 6 has been rewritten as new claim 67. Applicants request reconsideration of this rejection because Focsaneanu does not teach or suggest: (1) a user selecting a transactional application, or (2) a transactional application that requests transaction data.

Prior to discussing the above two points further, the Applicant will first discuss Focsaneanu briefly. Focsaneanu teaches a system where an access module automatically analyzes a communication signal, using an identifying circuit and a database, in order to determine whether to route the communication on a POTS or data service channel. As discussed at column 8, lines 6-19:

> "A processor 246 performs a selection and enablement of either POTS service or data services in response to the identifying circuit. The access module also has a local database 248 or has access to a remote database, both of which store information concerning the user profile, address table and service provider profile, etc. A decoder 250 decodes the modem signal and a controller 252 analyzes the contents of a data connection request to identify the service requested. Upon identification of the type of service requested, the controller performs address conversion, protocol conversion, rerouting, etc., and exchanges packetized data formed at PAD 254 (packet assembly/disassembly) with the data network in accordance with information stored in the database."

The Examiner appears to be interpreting Focsaneanu's database as a transactional application. Applicants submit that this is not appropriate, but even with this interpretation Focsaneanu does not show the limitations of the claims. Returning to the two points discussed above:

Claim 67 recites, "providing a transactional application selection mechanism to allow a user to select a transactional application." As discussed above and elsewhere in Focsaneanu, use of the database is completely transparent to the user. The user does not select the database (or any other application which could be interpreted as a transactional application), rather the database is used automatically by the processor in response to the access module receiving a communication signal. Accordingly, claim 67 is believed to be allowable.

Claim 67 also recites, "requesting transaction data from one or more other computer systems connected with the value added network with the transactional application." Even if Focsaneanu's database is interpreted as being a transactional application, there is no teaching or suggestion that

the database request transaction data from one or more other computer systems. Accordingly, claim 67 is believed to be allowable.

Claims 68-79 depend from claim 67 and are believed to be allowable therefor as well as for the recitations independently set forth therein.

Claim 80 is a Beauregard-type claim having similar limitations to claim 67 and is also believed to be allowable. Claims 81-84 depend from claim 80 and are believed to be allowable therefor as well as for the recitations independently set forth therein.

### The Dependent Claims Are Even More Distinguishable Over Focsaneanu

Claims 68 and 82 recite, "using a routing switch within the application layer of the OSI model to perform application layer routing." As discussed above, Focsaneanu does not teach or suggest application layer switchs. Accordingly, claims 68 and 82 are believed to be allowable.

### Conclusion

Applicant respectfully submits that the rejections have been overcome by the amendment and remark, and that the claims as amended are now in condition for allowance. Accordingly, Applicant respectfully requests the rejections be withdrawn and the claims as amended be allowed."

155. Lakshmi-Arunachalam, Ph.D.'s Opening Appeal Brief (which CAFC failed to accept for no

valid reason) in CAFC Case No. 14-1495 *infra*, which shows JPMorgan and their expert

witness Ms. Spielman lied to the Court and the terms "VAN switch," "switching" "means for

switching to a transactional application in response to a user specification from a network

application," "means for receiving said user specification," "means for enabling a switch to

said transactional application," "means for activating said transactional application," "means

for creating a transaction link between said network application and transactional

application," "means for presenting said user with a list of transactional applications, each of

said transactional applications being associated with a particular value-added network service

provider," "means for submitting said user specification according to a user's selection of

said transactional application from said list of transactional applications," "means for transmitting a transaction request from said transactional application," "means for processing said transaction request," "means for coupling said means for transmitting to a host means," "means for activating an agent to create a transaction link between said user specification and said transactional application," are **not** indefinite. Defendant Robinson's constructions of "object routing" and "a routed transactional data structure that is both complete-deferred, in addition to being specific to the POSvc application," "transactional application," "real-time," "Web application," and "network application" are incorrect, not in accord with the specification or prosecution history.

156. **The prior art of the '158 patent and prosecution histories shed light on claim construction of the terms erroneously construed by Defendant Robinson:**

157.   The art cited in the prosecution history of the '158 patent are U.S. Patent Nos. 6,279,001 ("DeBettencourt") and 5,793,964 ("Rogers").

> "(a) DeBettencourt, ...relates to load balancing among Web servers for serving Web pages and is unrelated to Applicant's current patent application and parent patents..."

> "DeBettencourt... relates to Web browsing (see ... Fig. 2 in Applicant's parent patent application, U.S. Provisional Patent # 60/006,634) as opposed to Web transactions from Point-of-Service Web applications from a Web page, as in the Applicant's claims. Taking into account the Examiner's objections, Applicant respectfully modified Claims ..., so as to distinguish between mere Web browsing as in DeBettencourt versus Web transactions from Point-of-Service (see in the priority chain of this patent application the parent U.S. Patent No. 5,778,178:6:45-46; Fig. 5C) Web applications (see 5,778,178:2:42) across a service network (see 5,778,178:5:51-53) atop the Web, utilizing object routing..., as in Applicant's patent application. Applicant respectfully notes that "content" in mere Web browsing is distinguished from Web applications or on-line services (See parent Patent 5,778,178:1:63-64) atop the Web and has modified the claims appropriately. These modifications to the claims, as amended, should clarify and distinguish the claims in

Applicant's current patent application from DeBettencourt and overcome the Examiner's objections…"

"In DeBettencourt, Col. 4, Ln. 54-67, an "application" is defined as "an aggregation of related web pages presented to a user…." An "application", as in DeBettencourt, is readily distinguished from a transactional Web application, with an "object" …, that connects to a transactional Point-of-Service application across a service network atop the World Wide Web, as claimed in applicant's patent application. The exchange components (see 5,778,178:6:8-66) in the Applicant's claims also differ from the "web service system" in DeBettencourt. The so-called "web service system" in DeBettencourt serves web pages, whereas the exchange component in applicant's patent application manages the connection between the Web user and the Web Merchant's Point-of-Service application (see parent patent 5,778,178 Col. 6, Ln. 65-66, "this connection between user **100** and Bank services is managed by exchange 501.) Fig. 5B in the Applicant's parent patent 5,778,178, illustrates exchange 501. "Exchange 501 comprises web page 505 and Point-of-Service (POSvc) applications 510. Exchange 501 also conceptually includes a switching component and an object routing component … ", as in Applicant's parent Patent # 5,778,178, Col. 6 Ln. 11-14. DeBettencourt's web service system is missing a switching component and an object routing component, as well as a Point-of-Service application."

"…pending claims … "broadest reasonable interpretation" …must be "consistent with the specification"…" *Phillips v. AWH Corp.,* 415 F .3d 1303, 1316 (Fed. Cir. 2005);… The Applicant respectfully submits that similar *words* do not equate to similar *concepts.* The Examiner's application of Rogers…requires adoption of an interpretation of the claims that is inconsistent with the specification and that would not have been adopted by one of ordinary skill in the art."

"Rogers discloses 'image objects 30, 31, 32, 33, 34.' See 964:9:67; Fig. 2. Said objects do not constitute an encapsulation of data …specific to a transactional web application' as is the' object' that is recited in independent claim 1 of the present application."

**158. The prior art of the '492 patent and prosecution histories shed light on claim construction of the terms erroneously construed by Defendant Robinson:**

159.  The prior art cited in the prosecution history of the '492 patent is U.S. Patent Nos.

5,793,964 ("Rogers") and 7,600,027 ("Yan"). Excerpts from the prosecution history clearly

show the distinction between the claim terms from the cited art.

"Rogers is directed toward display of pie-charts on a Web page...and is unrelated to Applicant's invention...Rogers is missing the following claim elements from the claimed inventions in the subject patent Application:
• A value-added network (VAN) switch;
• A value-added network (VAN) service;
• Web applications on a Web page, further evidenced by Rogers using a Web form and CGI and that there is no Web application, only a Web form on a Web page;
• Real-time Web transactions from a Web application;
• An application layer switch;
• Application layer of OSI model, Layer 7;
• A service network running on top of a facilities network, namely, the Web, Internet and e-mail networks;
• Employee Web applications...Payroll..., human resources...financial Web applications ....
• Web application network portal.
• Therefore, Rogers neither anticipates nor renders obvious Claims 8-20.

Rogers does not disclose or suggest a value-added-network (VAN) switch as claimed in Applicant's Claims 8-14, 17 and 19....Rogers does not disclose or suggest Web application or a Point-of-Service application on a Web page, as required by the claims in the subject patent Application. A "service" or on-line service atop the Web in the subject patent Application is a Web application or Point-of-service (POSvc) application.

The Office Action has failed to distinguish between a physical network or "a facilities network" and the "service network" "atop a facilities network," such as the physical Internet, Web, ... email networks" or "other IP-based facilities networks," as set forth in the subject patent application or in the parent patents and patent applications in the priority chain to the subject patent Application at paragraphs [0038] and [0040]. Instead, Rogers describes a physical network, for example, the DIS LAN.

In the subject patent Application at paragraphs [0005] - [0006] it has been shown that CGI is irrelevant to the subject invention, and CGI has been disclaimed by the Applicant. CGI, when the Web was in its infancy, lacked many of the capabilities of the invention as defined by claims 8-20 of the subject Patent Application. CGI strips field-by-field from a Web form and assembles/disassembles. The very use of CGI in Rogers evidences that there is a Web form on a Web page and that a Web application or point-of-service application on a Web page is non-existent in CGI and in Rogers.

The Office Action refers to a DIS in Rogers and the DIS is not on a Web page, nor is the DIS a point-of-service application on a Web page. The

DIS is not a Web application. The DIS in Rogers is in a LAN, an IBM token ring LAN, and not "on a Web page."...

Rogers discloses "image objects," not a Web application or Point-of-Service application provided on a Web page, nor a Point-of-Service application offered as an on-line service on a Web page. A Point-of-Service application on a Web page or Web application is non-existent in Rogers. Rogers concerns displays on a Web browser that include pie charts..."

"Yan is directed toward avoiding session data collisions and a session information cache that stores application session data handled at a portal server and minimizes network traffic and save space on a user's system. These details are wholly unrelated to the Applicant's invention... Yan does not disclose or teach an intelligent overlay "service network atop the Web" from a Point-of-Service to a "second application" across a service network atop the Web. Yan discloses a physical network and the physical Internet, **not** a service network across the Web. The Applicant clearly distinguishes between a physical network /facilities network, such as Yan's network 112 ('027:6:45-53) versus the service network or value-added service network atop the Web or service Internet...."

**160. The prior art of the '339 patent and prosecution histories are different from those of the '492, 500, '158 patents and sheds light on claim construction of the terms erroneously construed by Defendant Robinson:**

161.   The prior art cited in the '339 patent involved Rakavy et al. (US 5,913,040) and many others.

"Rakavy seeks to monitor communications line utilization rate of a physical network which operates at the transport, network layers and lower layers, and transmit a selected advertisement in background mode with minimal interference with other processes during low communications line utilization. Rakavy does not disclose a Web application including at least one object comprising information entries and attributes, wherein the object exposes one or more objects of a line of Web applications to the user."

"Rakavy does not teach real-time, nor a service network on the Web. Rakavy teaches deferred communications over a physical network at the lower layers, such as pinging an Advertising System Server 600 or the Network Service Provider 701."

"...Rakavy cannot perform a real-time non-deferred bidirectional Web transaction. Rather, Rakavy merely discloses that at certain times certain information is communicated between the network system and the local computer. See, for example, in Rakavy 12:41-50:"

"An important part of the functionality of the client system is the ability to resume the transfer of an Advertisement 50 which had been only partially transferred during the previous connection, i.e. the client system is preferably able to reestablish transmission of a file after a break in the Communications Link 703. Preferably, the client system will resume transmission from the point in the file at which communications was broken off..."

"Thus, Rakavy teaches deferred unidirectional communications.
...Rakavy teaches about processing at the operating system routine and lower layers of the network, a physical network such as a LAN, "voice connection through the Modem 520", TCP/IP (which is only up to the transport and network layers), the Communications Link 703 (which is a physical network as shown in the figures of Rakavy), ISDN or a dial-up connection. Rakavy relates to the display of an advertisement."

"See also Rakavy '040: "The advertisement is preferably displayed during idle time as a screen saver utility when the computer is not receiving keyboard input or updating the user's display..."

"See Rakavy, Figs 4-10, which are completely different from Fig. 8 in the subject patent application and the '178 patent. Rakavy is lacking the limitations of Claims 1, 8 and 15. The subject patent application and the parent patents, the 5,778,178 and the provisional patent application with Serial No.60/006,634 teach "a service network running on top of a facilities network, namely the Internet, the Web or email-networks" as in '178:5:51-53 and in '178:6:24-26 "a service network, operating within the boundaries of a facilities-based network." Rakavy relates to the facilities network, the physical network, such as for example, the physical Internet, operating at the transport and network layers, not in the application layer as the on-line service network operating over the physical network or facilities network, such as the physical Internet or a facilities network such as the Web. Rakavy teaches in '040 that:

"The PPP-TCP/IP Over Modem Protocol 295 module provides the ability to use the TCP/IP protocol over a specific type of physical communication line, i.e. a pair of modems connected over a telephone line.

In the above excerpt, the Internet refers to the physical Internet. TCP/IP works only up to Layer 4 and operates in the network and transport layers.

What is disclosed in the above excerpt is about <u>access to the physical Internet via a "fixed connection" or "a dial-up connection.</u>" Whereas in the subject patent application and the parent '178 patent, it is taught that <u>"The present invention is implemented to function as a routing switch in the application layer 307.</u> See '178:5:12-14. Thus, <u>Rakavy is about the physical network and teaches away from "a service network over the Web" and "a routing switch within the application layer of the OSI model" "to perform application layer routing." The distinction of the routing switch within the application layer of the OSI model was made and allowed in the parent 6,212,556 patent during the original prosecution, when the then Examiner had raised Focsaneanu which was about lower layers of the OSI model. Web applications are also missing in Rakavy, as discussed above. Claim 16 is thus allowable. For the above reasons, it would not have been obvious for one of ordinary skill in the art to use Rakavy to arrive at the Applicant's inventions in the subject patent application or in the parent' 178 patent.</u> Therefore, independent Claims 1, 8 and 15 are patentable under U.S.C.103(a) over Rakavy... many elements of Claims 8 and 15 are missing in Rakavy, as shown below. See '178:6:24-26 "...creates and allows for the management (and distributed control) of a service network, operating within the boundaries of an IP-based facilities network." See' 178:6:65-66 "This connection between user 100 and Bank services is managed by Exchange 501." ...A Web application is foreign to and is missing in Rakavy. Inventor was the first to invent a Web application. See '178:2:42. A Web application as in Claim 17 is missing in Rakavy. Claim 17 is therefore allowable. Claim 15 is allowable for the same reasons as Claims 1, 8, 3 and 10...

"Claim 3 is not taught by Rakavy, nor by Rakavy in '040:2:28-40, as Rakavy is missing a Point-of-Service Application in real-time across a service network over the Web, and is also lacking a Web application, an "exchange" and "the request is handed over to an exchange from a Web application". The inventor was the first to teach a World Wide Web application, see '178:2:42. <u>Web applications did not exist before this was invented by the inventor of the subject application and the parent '178 patent and the provisional application 60/006,634. In the early stages of the Web, when the Web was in its infancy, what was taught was web browsing and a web server serving Web pages,</u> See '178:1:23-28. Rakavy '040:2:28-40 states:

" ... an inevitable slowing down of other computer processes attempting to communicate over a communications link. There exists a need, therefore, for a file transfer process which is designed to behave as a background task and have a minimal impact on foreground communications."

Rakavy does not disclose a system implementing Web application transactions over the application layer of the OSI model. To the contrary, everything in Rakavy appears to be at the TCP/IP transport layer of the OSI model, but, in any event, not at the application layer. Rakavy teaches away from Claim 8...."

**162.** **The prior art of the '506 patent and prosecution histories sheds light on claim construction of the terms erroneously construed by Defendant Robinson:**

163.    The cited art is U.S. Patent Nos. 6,249,291 ("Popp") and 5,491,800 ("Goldsmith"). Popp relates to display, Goldsmith to session and transport layers, "teach away from user selection-based handoff of application service processing such as for a commercial service."

**164.** **The prior art of the '500 patent, the parent 5,778,178 ('178) patent and prosecution histories sheds light on claim construction of the terms erroneously construed by Defendant Robinson and that the term "POSvc Application" has clear written description and is enabled, contrary to JPMorgan's false statements to Defendant Robinson:**

The cited art is Davison relating to CGI.

"...Examiner contends...Davison teaches...claimed elements in "an HTML Web page with URL links to application programs," thus rendering the claimed invention unpatentable. Applicants respectfully submit that the object identities according to the presently claimed invention are distinctly different from an HTML page with URL links. As claimed in...pending claims, the object identity represents a networked object...establishes the individual object as an "IP'-reachable" or accessible node on the Internet. This Internet address is used to uniquely identify and access the object from the virtual information store. This type of an "object" is significantly different from an HTML page that is accessed via a URL. Although an HTML page may be utilized by a user to specify the type of transaction desired (e.g. a POSvc Application is essentially viewed by the user as a Web page, as described in the specification), the HTML page described in Davison is simply an entry form and does not provide any type of object routing capability, as presently claimed. Davison describes how to create a standard HTML Web page that contains HTML forms. These forms are non-interactive Web pages that do not allow a user to perform live, real-time, bi-directional transactions, with object routing, as claimed. In contrast, according to the presently claimed invention, if a Web Merchant decides to offer a POSvc Application that allows access to checking and savings accounts, the object identities according to the

claimed invention refer to the individual checking and savings accounts, not to the POSvc Application Web page. Each account is an individual network addressed object that is accessible on the network. Thus, each account is an object identity associated with information entries and attributes, and the object identity represents a networked object. The object identity (the account) is associated with a unique network address, and the unique network address is utilized to identify and route the object identity on the Web/network. This type of an object routing system is not taught or suggested by Davison. As such Applicant respectfully submits that the claimed invention is patentable over Davison." ('178/'500 file history)

165.   **"POINT-OF-SERVICE (POSvc) APPLICATION"**

166.   Defendant Robinson incorrectly construed "POSvc Application" as "a software program that transmits a user's request for a service," not in accord with the specification. Defendant Robinson erred by misapplying "broadest reasonable interpretation" ("…not a rule of claim construction," per Judge Newman *re Skvorecz*, Fed. Cir. No. 2008-1221, 9/3/09) to arrive at a legally incorrect interpretation, without exploring the metes and bounds to which Plaintiff is entitled, particularly as this term was coined by the inventor and can only take on the meaning ascribed to it by inventor in the specification and prosecution history. Defendant Robinson  missed the disclosures in the specification that a POSvc Application is a transactional application, from which a Web User **100** transacts; that this POSvc Application is a transactional application that *must* be displayed on a Web page or Web browser; and POSvc Application is an **application that executes** the type of **transaction** that the user may be interested in performing.

> "POSvc Applications 510 are **transactional applications,** namely applications that are designed to incorporate and take advantage of the capabilities provided by the present invention…switching, object routing, application and service management functions." ('500:6:11-14)
> "A **POSvc Application** is an application that can execute the type of transaction that the user may be interested in performing. The POSvc list is displayed via the graphical user interface component. One

embodiment of <u>the present invention supports HyperText Markup Language as the graphical user interface component</u>...variety of other graphical user interface standards can also be utilized to implement the graphical user interface." ('500:6:30-36)

167.  Defendant Robinson also failed to give credence to the very next sentence in the Patent, which <u>characterizes the application as "displayed via the graphical user interface component."</u> Nor did Defendant Robinson address the fact that such an application is a "<u>transactional application[] . . .designed to incorporate</u> and take advantage of the capabilities provided by the present invention," including "<u>switching, object routing, application and service management functions."</u> ( '500:6:11-13).  So, the <u>POSvc Application is a transactional application that displays an individual networked object identity with information entries and attributes</u> (Fig. 5D), <u>designed to incorporate object routing.</u> Defendant Robinson's construction also disregards the fact that the ability of a POSvc Application to "perform . . . robust, <u>real-time transactions from a Web client is a significant aspect of the present invention.</u> ('500:6:66-7:12). Such functionality is better captured in Lakshmi-Arunachalam, Ph.D., the inventor's <u>construction,</u> "a <u>POSvc Application is a transactional application displayed on a Web page or Web browser</u> and <u>including an individual networked object with information entries and attributes</u> (with which the Web User interacts and transacts from) and that <u>executes a real-time Web transaction a user wants to perform."</u> Defendant Robinson does not offer the broadest reasonable construction **<u>in light of the specification</u>** as would be read by a person of ordinary skill in the art at the time of the invention. Figs.4B, 5B-D, 6A illustrate <u>a POSvc Application being displayed on a Web page.</u> Specification ('500:9:2-4), too, clearly states that "[a]pplication service 704 includes POSvc Applications such as Bank POSvc described above, and illustrated in Fig. 6A," which

corresponds to VAN service 704. Fig.5D shows POSvc Application displayed on a Web page including <u>object identity with information entries and attributes</u> ("NAME," "PASSWORD") displayed on a Web page. '500:6:66-7:12 also details information entries, such as, user **100**, checking, savings account #s, $500 for attributes, name of user, checking, savings accounts, amount transferred, in checking <u>account object identity, which is an individual networked object that uniquely identifies a specific instantiation of the object.</u> ('500:7:65-8:3). *See* '178/'500 file histories and columns 4-5.

> "<u>FIG.3 illustrates...(OSI) reference model...**The present invention is implemented to function as a routing switch within the "application layer" of the OSI model**</u>...
>
> <u>Network layer 303...contains hardware units such as routers</u>... Transport layer 304...<u>application layer 307...provides...means for application programs to access...OSI environment...**the present invention is implemented to function as a routing switch in application layer 307.** Application layer routing creates an open channel for the management, and...selective flow of data from remote databases on a network.</u>" ('492:4:58-5:27)

168.    While '500:6:30-34 describes "<u>POSvc Application</u>" as "an <u>application that</u> can <u>execute the type of transaction that the user may be interested in performing</u>," Defendant Robinson's construction fails to reflect even this aspect of the patent. For example, there is no discussion of 'transmits the user's request for a service." Defendant Robinson  overlooked the goal of the patent is for a Web User to be able to perform a real-time Web transaction from a POSvc Application displayed on a Web page or Web browser and that this capability did not exist for a Web User prior to the present invention. See '500:5:27-42; See shortcomings of CGI and prior art in 1995 in the specification, '492:1:33-2:45; 5:40-54.

169.    Defendant Robinson's construction is so broad as to encompass a CGI program or even a Web browser, which  the specification distinguishes away:

""Web browser" as used in the context of the present specification includes conventional Web browsers such as NCSA Mosaic™ from NCSA and Netscape Mosaic™ from Netscape™. The present invention is independent of the Web browser being utilized and the user can use any Web browser, without modifications to the Web browser." ('492:3)

170.    Defendant Robinson ignored that the specification ('492:6) states: "Exchange 501 processes the consumer's request and displays an exchange Web page 505 that includes a list of POSvc Applications 510 accessible by exchange 501." In the patents-in-suit, a POSvc Application displayed on a Web page is a Web client displayed on a Web browser or Web page and is the front-end client program a Web User 100 utilizes to run the application to perform two-way real-time transactions from the Web Merchant's Web Application. Further, the patents-in-suit state: "If user 100 desires to perform a number of banking transactions, and selects the Bank application, a Bank POSvc Application will be activated and presented to user 100, as illustrated in FIG.5D..." when the POSvc Application is selected, the POSvc Application activated, the Web User 100:

"will be able to connect to Bank services and utilize the application to perform banking transactions, thus accessing data from a host or data repository 575 in the Bank "Back-office."...As illustrated in FIG.5D, once the connection is made between Bank POSvc Application 510(1), for example, and Bank services, an operator agent on Web server 104 may be activated to ensure the availability of distributed functions and capabilities." ('492:6:65-7:9).

171.    Figs.5C, 5D and the specification show that POSvc Application has and displays networked objects with both attributes and information entries.

172.    The construction provided by Plaintiff derives entirely from actual definitions of the term in the specification, drawings and the prosecution history.



Figure 5C

Figure 5D

173.    Defendant Robinson's  Orders and Judgments in 1:12-cv-282-SLR/RGA (D.Del.), as

well as Defendant Andrews' Orders and Judgments in the *Fulton Bank* Case No. 1:14-cv-

490-RGA (D.Del.), and Defendant Laporte's Order in the *Fremont Bancorporation  et al*

Case No. 3:15-cv-00023-EDL (N.D. CA) are all void, as they all violate U.S. Supreme Court

J. Marshall's Ruling and Constitutional Precedent; **Defendants committed treason in not**

**upholding Supreme Court Justice Marshall's ruling.** Defendant Robinson  re-defined

"financial interests" away from industry standard definition of the term to exclude Judge's

financial holdings in mutual funds to benefit Judges, along with Jan Horbaly, the then Clerk

of the Court of the Federal Circuit in 2001. She recused in May 2015 within a week after

Plaintiff moved for her to recuse and the case was re-assigned to Andrews, who has refused

to vacate her Orders.

174. **Discrimination: Defendants gave false excuses for erratic, arbitrary, irrational and disparate treatment**

175.   **Defendant Andrews  had direct stock and financial holdings in JPMorgan and**

**Fedex  and conflicts of interest with Corporate Infringers  making his  rulings void**.

**Defendant Andrews, Stark, Laporte** treated Lakshmi- Arunachalam, Ph.D.  very harshly

for no valid reason and **retaliated** against Lakshmi- Arunachalam, Ph.D.  for exercising her

constitutional right in requesting that  a neutral judge preside over her cases and Defendants

gave false excuses with a mere explication of a justification such as they provided to Plaintiff

that do not satisfy the rational-basis test. *Zobel v. Williams*, 457 U.S. 55, 61- 63 (1982).

## ADDITIONAL ARGUMENTS

176. **CAFC held: "the prior art cited in the prosecution history of a patent forms part of the intrinsic evidence for claim construction purposes."**

177.   See *Powell v. Home Depot*, App. No. 2010-1309 (Fed. Cir. Nov 14, 2011); *Kumar v.*

*Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003).

178.   Three District Courts and Defendants Robinson, Andrews and Laporte did **not** examine

the prior art cited in the prosecution history of the '339 patent or its parent 6,212,556 (" '556

patent") or  5,778,178 (" '178 patent") or of the '492, '500 or '158 patents in the *Fremont*

*Bancorporation* or *Fulton Bank*  or *JPMorgan* cases.

179.   Defendants **denied Lakshmi-Arunachalam, Ph.D.  due process and subjected her to**

**unequal treatment, against the law**.

180.   **DUE PROCESS**

181.   **Protected Interest**

182.   **Plaintiff was denied her rights under the 14th amendment: "Equal Protection"**

183.   Defendants violated substantive due process by their actions and inactions that violated "personal immunities" that are "fundamental," that is, "implicit in the concept of ordered liberty." *Rochin v. California*, 342 U.S. 165, 169-175 (1952), the <u>prototypical "police brutality" case in which the violations were said to have "shock[ed] the conscience."</u>

184.   **Defendants' Actions are Shocking to the Conscience, Violate Laws, Caused Medical Injury and Deprived Plaintiff of Property Rights without Due Process.**

185.   **Defendants' Unfair Discrimination is Shocking to the Conscience**

186.   This unfair discrimination and Defendants' acts of brutality, shocking to the conscience, and inactions, in violation of: the U.S. Constitution, Fifth and Fourteenth Amendment due process and equal protection rights, substantive due process have caused Plaintiff major medical injury and tremendous financial damage, deprivation of property without due process, deprivation of liberty and denial of substantive due process.

187.   **Discrimination: Defendants   Gave False Excuses For Erratic and Disparate Treatment**

188.   Defendants infringed a fundamental right of Plaintiff and discriminated against Plaintiff. Plaintiff seeks damages from Defendants for not providing the protection from their <u>erratic and disparate treatment</u> that are the hallmarks of invidious discrimination.

189.   Defendants' mere explication of a justification such as they provided to Plaintiff in the face of contrary evidence does not satisfy the rational-basis test. Defendants relied on a classification whose relationship to an asserted goal is so attenuated as to render the distinction <u>arbitrary or irrational</u>. *See Zobel v. Williams*, 457 U.S. 55, 61- 63 (1982).

190.   Defendants did not provide equal protection to *pro se* Plaintiff and to the Corporate

Infringers which have financially benefited excessively without compensating the inventor.

**191. Defendants' Actions were Conscious and Deliberate and Caused Medical Injury and Financial Damage to Plaintiff**

192.    Defendants denied Plaintiff substantive due process based on deprivations caused by the Defendants failure to grant Plaintiff's Motions caused medical injury and financial damage to Plaintiff. **Defendants' deliberate actions caused the injuries**, which resulted in medical injury to Plaintiff and deprivation of property rights without a hearing.

**COUNT I**
**VIOLATIONS OF THE CONSTITUTION AND OATHS OF OFFICE**
**AND BREACH OF PUBLIC TRUST**

193.    Lakshmi-Arunachalam, Ph.D. incorporates and re-alleges paragraphs 1-192.

194.    Defendants' violations of the Constitution and Oaths of Office to enforce J. Marshall's 'First Impression' Constitutional Res Judicata ruling in *Fletcher* in 1810 injured Plaintiff. Defendants committed treason in not upholding Supreme Court J. Marshall's Constitutional *Res Judicata* ruling on Government Grants and Patent Prosecution History Estoppel upheld by the Supreme Court and failed to protect Plaintiff/inventor from encroachments on her protected patents by Corporate thieves along with  judges in District and Appellate courts, which caused financial and medical injury to Plaintiff of the order of magnitude of trillions of dollars. This has been the biggest heist of the century, the theft of Plaintiff's patented Web applications displayed on a Web browser, such as Web banking, social networking and other Web applications in horizontal and vertical markets. Defendants failed in their duty to uphold the Constitution and breached public trust and committed fraud on the public. Plaintiff seeks from this Court to void all the judgments of Defendants in District Courts, and for each of the

Defendants to pay Plaintiff $250 Billion, as set forth below in Plaintiff's prayer for relief.

## COUNT II
## TREASON, MISPRISION OF TREASON, AIDING AND ABETTING TREASON

195.     Lakshmi-Arunachalam, Ph.D. incorporates and re-alleges paragraphs 1-194.

196.     Defendants are  operating as a criminal enterprise, without jurisdiction and authority and

lost their immunity,  engaged in aiding and abetting the USPTO's treasonous breach of

contract with Plaintiff/inventor over her 1995 Patent Grant. Judges have given themselves

judicial immunity for their judicial functions. Defendants are  and have Judges have no

judicial immunity for criminal acts, aiding, assisting, or conniving with others who perform a

criminal act, or for their administrative/ministerial duties. When a judge has a duty to act, he

does not have discretion - he is then not performing a judicial act, he is performing a

ministerial act. Judicial immunity does not exist for Defendants who are judges who engage

in criminal activity, for judges who connive with, aid and abet the criminal activity of

another judge, or to a judge for damages sustained by Plaintiff, a person who has been

harmed by the Defendants'  connivance with, aiding and abetting, another judge's criminal

activity.

197.     Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if

a court is "without authority, its judgments and orders are regarded as nullities. ... all persons

concerned in executing such judgments or sentences, are considered, in law, as trespassers."

*Elliot v. Piersol*, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828).

198.     When judges act when they do not have jurisdiction to act, or they enforce a void order

(an order issued by a judge without jurisdiction), they become trespassers of the law, and are

engaged in treason. Defendant Stark  is without jurisdiction to dismiss the civil RICO case

against Defendant Andrews.

199.    The Court in *Yates v. Village of Hoffman Estates*, Illinois, 209 F.Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse." When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses subject-matter jurisdiction and the judges orders are void, of no legal force or effect. Defendants lost their jurisdiction and their Orders are void.

200.    The U.S. Supreme Court, in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original]. By law, a judge is a state officer. The judge then acts not as a judge, but as a private individual (in his person.)

201.    The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401 (1958).

202.    Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the Supreme Law of the Land. The judge is engaged in acts of treason.  Having taken at least two, if not three, oaths of office to support the Constitution of the United States, any judge who has acted in violation of the Constitution is engaged in an act or acts of treason.  If a judge does not fully

comply with the Constitution, then his orders are void, In re *Sawyer*, 124 U.S. 200 (1888).

203.   Whenever a judge acts where he/she does not have jurisdiction to act, the judge is

engaged in an act or acts of treason. *U.S. v. Will*, 449 U.S. 200, 216, 101 S.Ct. 471, 66

L.Ed.2d 392, 406 (1980); *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257

(1821).

204.   Any judge or attorney who does not report the above judges for treason as required by

law may themselves be guilty of misprision of treason, 18 U.S.C. Section 2382. Defendants

Stark and Laporte are guilty of misprision of treason for not reporting Defendants Andrews'

and Robinson's treason in addition to their own treason for not upholding J. Marshall's ruling

in *Fletcher*.

205.   Defendants Andrews, Robinson, Laporte and Stark have committed treason, misprision

of treason and have aided and abetted treason by not upholding the Constitution and violating

their Oaths of office.

**COUNT III**
**CONSPIRACY**

206.   Lakshmi-Arunachalam, Ph.D. incorporates and re-alleges paragraphs 1-205.

207.   *See* Paragraphs 94, 96, 119 *supra* for more details on how Defendants committed

conspiracy and the object of their conspiracy and scheme. Plaintiff Lakshmi-Arunachalam,

Ph.D. was harmed by co-conspirators, namely,  Defendants Andrews, Laporte, Robinson and

Stark, the Corporate Infringers, CAFC Panel Judges and Third Circuit panel Judges and the

USPTO/PTAB  and their  harmful acts (*See* Paragraphs 94, 96, 119 *supra* )  and that

Defendants are responsible for the harm because the Defendants  were part of a conspiracy to

commit harmful acts (*See* Paragraphs 94, 96, 119 *supra* ). Plaintiff has proved in paragraphs

1-205 that (a) Defendants were aware that they each planned to quash Plaintiff's patents prohibited by J. Marshall's ruling in *Fletcher*, and (b) Defendants cooperated and agreed with co-conspirators in the judiciary and Corporate Infringers and Legislative Branch and intended that the wrongful act of violating the laws of the USA and not enforcing the U.S. Constitution be committed, in committing treason and failing to uphold Patent Prosecution History Estoppel and also Supreme Court J. Marshall's Ruling in *Fletcher* and in depriving Plaintiff of her constitutional rights to Patent Prosecution History Estoppel, Constitutional *Res Judicata* that Government Grants cannot be revoked, rights to a neutral judge and due process rights to procedures as well as property rights. Defendants made it disparately expensive, hazardous and burdensome for Plaintiff to have access to justice and to the courts, and retaliated against her for requesting a neutral judge with no financial or relationship conflicts of interest in Corporate Infringers and Third Party Requesters like Microsoft and SAP and even denied her electronic filing and refused to docket her pleadings and making the costs to Plaintiff prohibitive to have access to justice and the Courts and repeatedly failed to docket Plaintiff's pleadings. <u>Defendants engaged in a conspiracy to quash Plaintiff's patents – the object of their scheme – under color of law and authority. Their conspiracy is easily inferred from circumstances,</u> outlined in paragraphs 1-205, including the nature of the acts done, the relationship between the parties, and the interests of the co-conspirators.

## COUNT IV
### HINDERING ACCESS TO JUSTICE BY MISFEASANCE, DENIAL OF DUE PROCESS, DEPRIVATION OF RIGHTS, DEPRIVATION OF RIGHTS UNDER COLOR OF LAW UNDER I8 U.S.C. SECTION 242

208.   Lakshmi-Arunachalam, Ph.D. incorporates and re-alleges paragraphs 1-207.

209.   See details of Defendants hindering access to justice by misfeasance, denial of due

process, deprivation of rights and deprivation of rights under color of law in paragraphs 1-207 *supra*. Defendants deprived Plaintiff of her constitutional rights to Patent Prosecution History Estoppel, Constitutional *Res Judicata* that Government Grants cannot be revoked, rights to a neutral judge and due process rights to procedures as well as property rights. Defendants made it disparately expensive, hazardous and burdensome for Plaintiff to have access to justice and to the courts, and retaliated against her for requesting a neutral judge with no financial or relationship conflicts of interest in Corporate Infringers and Third Party Requesters like Microsoft and SAP and even denied her electronic filing and refused to docket her pleadings and making the costs to Plaintiff prohibitive to have access to justice and the Courts and repeatedly failed to docket Plaintiff's pleadings. Plaintiffs engaged in a conspiracy to quash Plaintiff's patents under color of law and authority.

210.    Defendants committed a crime under Section 242 of Title 18 by acting under color of any law to willfully deprive Plaintiff of a right or privilege protected by the Constitution or laws of the United States and injured Plaintiff, causing her financial damage of billions of dollars and personal injury to her health. Defendants showed a pattern of behaving and ruling in a manner that prevented and hindered Plaintiff from receiving full, fair, impartial hearings or the full, fair, impartial administration of justice and there is clear and convincing evidence which would lead a reasonable person to believe Plaintiff has been prevented or hindered from receiving full, fair, impartial hearings or the full, fair, impartial administration of justice.

211.    For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within the their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting

to or pretending to act in the performance of his/her official duties.

**PRAYER FOR RELIEF**
**FOR COUNTS I–IV**
**DEMAND FOR JUDGMENT AGAINST ALL DEFENDANTS <u>TO VOID ALL THEIR</u>**
**<u>ORDERS AGAINST PLAINTIFF AND TO AWARD  PLAINTIFF $250 BILLION BY</u>**
**<u>EACH DEFENDANT FOR EACH OF THE FOUR COUNTS.</u>**

212.    WHEREFORE, Plaintiff asks this Court to enter judgment against Defendants Andrews,

Robinson, Stark and Laporte, granting the following relief and based on violations of the

Constitution and their Oaths of Office, breach of public trust and fraud on the public,   and

for **each of** the Counts enumerated above:

 (i) TO VOID ALL DEFENDANTS' ORDERS AGAINST PLAINTIFF.

 (ii) To Award $250 Billion per Defendant per each of the four counts.

213.    Plaintiff's declaration under penalty of perjury is attached. A certificate of mailing by

Express Mail via the U.S. Post Office to the Clerk of the Court, United States District Court

for the Northern District of California, San Jose Division, is attached.

**VERIFICATION**

214.    I, Lakshmi-Arunachalam, Ph.D. Plaintiff in the above entitled action, hereby verify

under penalty of perjury, under the laws of the United States of America, that the above

statement of facts and laws is true and correct, according to the best of my current

information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the

Supremacy Clause in the Constitution for the United States of America, as lawfully amended

(hereinafter "U. S. Constitution").


Dated: June 12, 2017        Signed: *Lakshmi Arunachalam*
                            Printed: Lakshmi-Arunachalam, Ph.D.

**DEMAND FOR JURY TRIAL**

215.   Plaintiff demands a jury trial on all issues.

DATED: June 12, 2017                          Respectfully submitted,

*Lakshmi Arunachalam*

222 Stanford Avenue                    Lakshmi-Arunachalam, Ph.D.
Menlo Park, CA 94025                   Individual and Owner of Patents-in-Suit
650 690 0995                           *Plaintiff*
laks22002@yahoo.com                    *Lakshmi-Arunachalam, Ph.D.*

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that I am the Plaintiff in the above

action, that I have read the above complaint, and that the information contained therein is true

and correct. 28 U.S.C. §1746; 18 U.S.C §1621.

Executed at Menlo Park, California on June 12, 2017.

Dated: June 12, 2017

*Lakshmi Arunachalam*

Plaintiff
Lakshmi-Arunachalam, Ph.D.
222 Stanford Ave, Menlo Park, CA 94025
Tel: 650 690 0995
laks22002@yahoo.com

**CERTIFICATE OF MAILING**

I certify that I filed an original and five copies of the attached Complaint, Lakshmi-Arunachalam, Ph.D.'s Declaration, Verification, and a copy of the same in a CD with the Clerk of the Court, United States District Court for the Northern District of California, San Jose Division for filing and docketing in this case on this 12th day of June, 2017, by myself personally delivering to:

Clerk of Court,
United States District Court for the Northern District of California, San Jose Division,
San Jose, CA

Date: June 12, 2017

*/s/Lakshmi Arunachalam/*

Signature of Plaintiff

Lakshmi-Arunachalam, Ph.D.
222 Stanford Ave,
Menlo Park, CA 94025
650 690 0995;
laks22002@yahoo.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

LAKSHMI-ARUNACHALAM, PH.D.                 )   Case No.:
                                           )
                  Plaintiff,               )   **VIOLATION OF THE CONSTITUTION**
                                           )   **AND OATH OF OFFICE, BREACH OF**
vs.                                        )   **PUBLIC TRUST, TREASON,**
                                           )   **MISPRISION OF TREASON, AIDING**
                                           )   **AND ABETTING TREASON,**
THE UNITED STATES PATENT AND               )   **CONSPIRACY, HINDERING ACCESS**
TRADEMARK OFFICE,                          )   **TO JUSTICE BY MISFEASANCE,**
PATENT TRIAL AND APPEALS BOARD,            )   **DENIAL OF DUE PROCESS,**
THE UNITED STATES,                         )   **DEPRIVATION OF RIGHTS,**
AND                                        )   **DEPRIVATION OF RIGHTS UNDER**
DOES 1-100 INCLUSIVE,                      )   **COLOR OF LAW**
                                           )
                  Defendants.              )   **DEMAND FOR JURY TRIAL**
                                           )   **YES**
                                           )

**DECLARATION OF LAKSHMI-ARUNACHALAM, PH.D.  IN SUPPORT OF**
**COMPLAINT**

I, LAKSHMI-ARUNACHALAM, Ph.D., declare:

I am the inventor and assignee of the U.S. Patent No. 7,340,506/US 7,340,506 C1

('506 patent) that has re-emerged successfully from an *inter-partes* re-examination by the

United States Patent and Trademark Office initiated by Microsoft, and also of the prior

patents-in-suit in the JPMorgan case 1:12-cv-282 (D.Del.), and all of my patents derive their

priority date from my provisional patent application with S/N 60/006,634 filed November 13,

1995. I reside at 222 Stanford Avenue, Menlo Park, CA 94025. I am *pro se* Plaintiff in the

above-captioned action. I make this declaration based on personal knowledge and, if called

upon to do so, could testify competently thereto.

I declare under the penalty of perjury under the laws of the United States and the

State of California and Delaware that the foregoing is true and correct and all the statements

1

in the Complaint are true and correct, to the best of my knowledge and belief. Executed this

2

12th day of June, 2017 in Menlo Park, California.

3

4

       222 Stanford Avenue

5

       Menlo Park, CA 94025

       Lakshmi-Arunachalam, Ph.D.

6

       650 690 0995, laks22002@yahoo.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAKSHMI-ARUNACHALAM, PH.D. | Case No.: |
| | |
| Plaintiff, | **VIOLATION OF THE CONSTITUTION** |
| | **AND OATH OF OFFICE, BREACH OF** |
| vs. | **PUBLIC TRUST, TREASON,** |
| | **MISPRISION OF TREASON, AIDING** |
| | **AND ABETTING TREASON,** |
| THE UNITED STATES PATENT AND | **CONSPIRACY, HINDERING ACCESS** |
| TRADEMARK OFFICE, | **TO JUSTICE BY MISFEASANCE,** |
| PATENT TRIAL AND APPEALS BOARD, | **DENIAL OF DUE PROCESS,** |
| THE UNITED STATES, | **DEPRIVATION OF RIGHTS,** |
| AND | **DEPRIVATION OF RIGHTS UNDER** |
| DOES 1-100 INCLUSIVE, | **COLOR OF LAW** |
| | |
| Defendants. | **DEMAND FOR JURY TRIAL** |
| | **YES** |

## CERTIFICATE OF MAILING AND CERTIFICATE OF SERVICE

I, Lakshmi-Arunachalam, Ph.D. hereby certify that on June 12, 2017, I filed an original and five copies and a CD of the attached COMPLAINT, Lakshmi-Arunachalam, Ph.D.'s Declaration and Verification in support thereof, with the Clerk of the Court, U.S. District Court for the Northern District of California by delivering it to:

Clerk of Court
U.S. District Court for the Northern District of California, San Jose Division
San Jose, CA

I also certify that I had a Process Server serve the same by Certified Mail via the U.S. Post Office and/or by having the Process Server going there in person to serve on June 12, 2017 to the Defendants in this action at their addresses.

DATED: June 12, 2017

Lakshmi-Arunachalam, Ph.D.
222 Stanford Avenue
Menlo Park, CA 94025
650 690 0995
laks22002@yahoo.com